# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

VOLVO CONSTRUCTION EQUIPMENT RENTS, INC,

    Plaintiff,

v.

NRL TEXAS RENTALS, LLC., *et al.*,

    Defendants.

2:09-cv-00032-JCM -VCF

**O R D E R**

Before the court is plaintiff Volvo Construction Equipment Rents, LLC's Motion To Strike And Permanently Exclude Defendants' Discovery Responses And Disclosures Pursuant to Fed. R. Civ. P. 26 And For Additional Sanctions. (#416). Defendants NRL Texas Rentals, LLC, *et al* filed an Opposition (#428), and plaintiff filed a Reply (#439).

Also before the court is defendants' Motion To Extend Discovery Deadline. (#490). Plaintiff filed an Opposition (#495), a Notice of Filing Exhibits (#496), and a Supplement thereto (#497). Defendants filed a Reply to the Supplement (#498).

Also before the court is plaintiff's Motion For Protective Order. (#499). Defendants filed an Opposition (#505), and plaintiff filed a Reply (#506).

Defendants filed a Supplement relating to all pending discovery motions on October 10, 2011. (#516). The court held a pretrial conference to address the pending discovery motions on December 8, 2011.

**Background**

Plaintiff filed its complaint (#1) on January 6, 2009, alleging that over thirty "directly related and controlled defendants" were involved in a "complex scheme of fraud, conversion, concealment and

misrepresentations perpetrated upon Volvo."[1] (#416-1). Plaintiff specifically identifies three individuals as participating in the wrongful conduct: Robert Balli from Las Vegas and brothers Dwight and Marcel Bosworth of Dallas. *Id.* In response to the complaint, defendants assert several affirmative defenses and counterclaims[2]. (#47 and #49).

## Motion To Strike And Permanently Exclude (#416)

In the present motion, plaintiff asks this court to strike several of defendants'[3] discovery responses and disclosures[4]. (#416). Plaintiff asserts that defendants have (a) failed to identify which

---

[1] On June 22, 2011, the court entered summary judgment on plaintiff's second, fourth, fifth, seventh, and eighth claims against the defendants (breach of contract of guarantees and a loan agreement). (#459). The court held that defendants have breached the multiple contractual agreements, and that defendants had no basis in law for these breaches. *Id.* Remaining claims are (1) breach of contract - loan documents NRL LV, (3) breach of contract - loan documents NRL TX, (6) breach of contract - guarantees NRL LV, (9) breach of contract - breach of covenant of good faith and fair dealing, (10) tort - breach of covenant of good faith and fair dealing, (11) alter ego/piercing the corporate veil, (12) fraud, fraudulent misrepresentation, constructive fraud, and fraud in the inducement, promissory estoppel and equitable estoppel, (13) negligence, (14) negligent misrepresentation, (15) unjust enrichment, (16) "trust fund" theory/equitable lien/constructive trust, (17) conversion, (18) civil conspiracy, (19) declaratory judgment, (20) possession/claim and delivery, and (21) concealment of assets and interference with repossession.

[2] Judge Mahan held a hearing on December 7, 2011, and granted plaintiff's motion (#511) to dismiss or for summary judgment against defendants' counterclaims.

[3] "Defendants" referenced in plaintiff's motion refer to: NRL Texas Rentals, L.L.C.; NRL San Antonio Rentals, LP; Robert Balli; Hilary Balli; R&H.P. Balli Family Trust; Bosworth Nevada Investments LLC; Dwight Bosworth; Marcel Bosworth; Marine Quest-Joe Pool, LP; Marine Quest-Texoma, LP; Marine Quest-Captains Cove, LP; Marine Quest-Eagle Mountain, LP; Marine Quest-Anderson Mill, LP; Marine Quest-Marshall Ford, LP; Marine Quest-Harbor One, LP; Marine Quest-Boz I, LP; Marine Quest-Hidden Cove, LP; Marine Quest-Executive, LP; Marine Quest-Chandler's Lancing, LP; and Marine Quest-Lake Country.

Plaintiff asserts that the following are explicitly excluded from "Defendants" listed above: NRL Rentals, L.L.C. (NRL Rentals LLC is the Debtor in United States Bankruptcy Court, District of Nevada Case No. 09-17790-bam), Jefferson Bank and Plains Capital Bank.

[4] Plaintiff asks this court to strike the following documents: (1) each of Defendants' Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents dated March 8, 2010, (2) each of Defendants' Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents dated August 23, 2010, (3) defendant Bob Balli's Second Supplement to the Initial Disclosures and Production of Documents Pursuant to FRCP 26(a) dated December 9, 2010, (4) defendants' Initial Disclosure Statement Pursuant to FRCP 26 dated April 7, 2010, (5) Defendants' First Supplement to the Initial Disclosures and Production of Documents Pursuant to FRCP 26(a) dated November 9, 2010, (6) defendants Bob Balli's Second Supplement to the Initial Disclosures and Production of Documents Pursuant to FRCP 26(a) dated December 9, 2010, and (7) defendants Third Supplement to the Initial Disclosures and Production of Documents Pursuant to FRCP 26(a) produced at the deposition

2

1  defendants disclosed what information during initial disclosures, (b) engaged in spoilation of records,
2  © provided some patently fraudulent disclosures and materially deceptive interrogatory answers, and
3  (d) failed to provide the plaintiff and the court with verifications for responses to interrogatories. *Id.*
4  The plaintiff asks this court to impose sanctions for these actions in the form of striking the produced
5  documents, forbidding their use by the defendants only, striking and dismissing defendants'
6  counterclaims, and requiring defendants to pay plaintiff's reasonable attorney's fees and costs. *Id.*

7  Defendants oppose the motion, and assert that former counsel is responsible for some of the
8  issues complained of, and that defendants and their present counsel have not in any way violated the
9  Federal Rules of Civil Procedure. (#428). The parties contend that they have met and conferred, but
10 have been unable to resolve the issues without the court's intervention. The court will discuss each
11 alleged sanctionable act below.

12 **A.     Refusal To Identify/Attribute**
13     **1.     Background/Argument**

14  On April 7, 2010, defendants provided the plaintiff with their initial disclosures and production
15 of documents consisting of 1,974 pages. On November 9, 2010, the defendants submitted their first
16 supplement to the initial disclosures and production of documents consisting of 433 pages. (#416-1).
17 Defendants represented to plaintiff that these disclosures were "joint and several." *Id.* Defendant Bob
18 Balli supplemented his initial disclosures on December 9, 2010, and on January 18, 2011, during Mr.
19 Balli's deposition, defendants produced another 1,553 pages of documents. *Id.* Defendants again
20 represented that these disclosures were "joint and several." *Id.*

21  Plaintiff, after receiving the initial disclosures, sent a letter to the defendants seeking a
22 designation as to which disclosures were attributed to which of the 31 defendants. *Id.* at Exhibit B.
23 Plaintiff asserts that it was concerned with the representation that the disclosures and documents were

---

of Robert Balli on January 18, 2011.

1 from all the defendants, because defendant Balli testified at the 341 examination for the Debtor, NRL
2 Rentals, LLC, that NRL had no records. *Id.* at Exhibit C. In the letter to defendants, plaintiff also
3 addressed its concern with the absence of any identification or computation of damages attributed to
4 each defendants' counterclaim, and asked whether the documents provided comprised of all of the
5 documents which defendants may use to support their claims. (#416-1). Initially, defendants' counsel
6 did not respond. Thereafter, counsel "generally refused to address the request," suggesting that plaintiff
7 follow up with a specific discovery request. (#416-1 Exhibit D).

In a subsequent letter dated July 20, 2010 (#416-1 Exhibit E), plaintiff sought clarification as
to which defendant provided which disclosures within the 1,974 documents disclosed. The defendants
did not respond to the letter. Again, on August 5, 2010, during a Local Rule 26-7 conference, plaintiff
inquired as to which disclosures were made by which defendants and the prior location/custody of the
records. (#416-1). Plaintiff contends that it was concerned with this issue, because of Balli's testimony
regarding the documents, and because of counsel Mr. Judd's representation to the Bankruptcy Court that
no records existed. *Id.* Plaintiff argues that, "to add to the uncertainty" surrounding the disclosures and
documents, Balli has now testified that "NONE of the disclosures were from records of any of the
defendants except himself, NRL Las Vegas and NRL San Antonio." (#416-1 Exhibit G). Plaintiff
asserts that defendants should be sanctioned for their misrepresentations regarding the disclosures being
"joint and several." (#416).

Defendants oppose the motion, and argue that the disclosures were "joint and several," "such
that all [d]efendants could utilize all documents, if necessary, to support their respective claims and/or
defenses." (#428). The defendants assert that they "were not required to take any further action or make
any additional explanation," and that "they did all that they were required to do under Rule 26(a)(1)."
*Id.* Further, defendants state that they made it clear to plaintiff that if it sought additional information
relating to the disclosures, plaintiff should prepare additional discovery requests. *Id.* In the reply
(#439), plaintiff does not address the issue regarding the "joint and several" disclosures.

4

## 2. Discussion

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), a party must provide to the other parties "a copy–or description by category and location–of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for the purposes of impeachment..." Plaintiff concedes that defendants submitted 1,974 pages of records on April 7, 2010, and submitted 433 pages of supplements on November 9, 2010. (#416-1). Defendants therefore complied with this rule, and are not required under the rule to identify which defendant produced which document. Fed. R. Civ. P. 26(a)(1)(A)(ii).

Rule 26(a) further provides that a party must provide to the other parties "a computation of each category of damages claimed by the disclosing party..." Fed. R. Civ. P. 26(a)(1)(A)(iii). Under Rule 41(b) and (c), if a plaintiff, including counter-claimants, cross-claimants, or third-party claimants, "fails to prosecute or to comply with these rules or court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b) and ©. Plaintiff argues that defendants have failed to provide a computation of each category of damages, and have thus failed to prosecute their counter-claims. (#416-1). In their opposition, defendants do not address this issue. (#428).

Judge Mahan held a hearing on December 7, 2011, and granted plaintiff's motion to dismiss or for summary judgment against defendants' counterclaims for, among other reasons, a failure to prosecute or provide a computation of damages. (#511). Thus, this court need not address the issue.

### B. Evasive/Incomplete Discovery Responses

#### 1. Background/Argument

Plaintiff propounded its first set of interrogatories and requests for production of documents on December 4, 2009. (#416-1). Defendants submitted responses on March 8, 2010, wherein defendants failed to answer a single interrogatory or produce documents. *Id.* Defendants filed a motion for protective order with regards to these discovery requests (#257), which the court denied for failure to

5

comply with the meet and confer requirements (#291). Defendants appealed to Judge Mahan, and the ruling was upheld. (#320). On August 23, 2010, defendants supplemented their responses, and "disclosed bate stamped 00001 through 01974 as the response to the requests for production of documents." (#416 Exhibit I). Plaintiff asserts that "all [d]efendants (except Robert Balli and NRL Las Vegas) simply answered by generally referring [p]laintiff to the initial 1,974 pages of "disclosures" as their response." *Id.* Plaintiff argues that this "ongoing and willful lack of substantive responses" has prevented plaintiff from proceeding with the litigation, and that this behavior warrants sanctions. *Id.*

In defendants' opposition (#428), they contend that simply because they have unsuccessfully attempted to obtain protective orders that caused delays in the proceedings, does not warrant sanctions. Defendants and their counsel state that they have not "provided any fraudulent or materially deceptive disclosures or responses." (#428). In the reply (#439), plaintiff lists the alleged "incomplete and evasive discovery responses" as another reason to further sanction defendants under Rule 37. During the hearing held before this court, plaintiff's counsel informed the court that discovery has been "dribbling" in since new defense counsel took over, but that the documents to date are useless and non-responsive.

## 2. Discussion

Pursuant to Fed. R. Civ. P. 37(a)(4), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." If a party fails to adequately answer interrogatories after the court has ordered them to do so, Rule 37(b) permits the court to impose sanctions. Fed. R. Civ. P. 37(b).

Plaintiff provided the court with an example of the answers provided in the defendants' supplement after the court ordered the same. (#416-1). Plaintiff's interrogatory No. 5 requested that the defendants "[s]tate the facts on which you rely in support of the [s]econd [a]ffirmative [d]efense contained in your [a]nswer, and identify the 'third parties' referenced therein." (#416-1). In response, all defendants provided the following identical answer: "Subject to and without waiving the prior

objection(s), Defendant responds as follows: Defendant directs Plaintiff to paragraphs 11 through 21 of Defendant's Counterclaim, and the documents produced by Defendant in this litigation, namely documents identified by Bates Numbers DEF 00001- DEF 01974." *Id.*

Defendants' responses evasively refer to 1,974 pages of already produced documents, without explaining which pages are responsive to which request. This amounts to a "failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Plaintiff is not seeking an order to compel, but is using defendants' actions as support for the motion to strike and its request to forbid defendants from presenting any evidence at trial. The court does not find that sanctions in the form of striking documents is warranted. However, as the court held in the hearing, the defendants are not permitted to provide supplements or "dribble-in" any other documents, and are precluded from entering into evidence at trial any documents not already produced in discovery.

### C. Spoilation of Records

#### 1. Background/Argument

Plaintiff alleges in the motion that "[d]efendants and their [c]ounsel have [e]ngaged in [s]poilation of [r]ecords," whereby Mr. Balli and Mr. Judd have "repeatedly lied about the location and custody of records and evidence." (#416-1). The plaintiff supports this assertion by providing examples to the court of instances where Mr. Balli testified that NRL Las Vegas had no records and that he had no knowledge of the whereabouts of certain records, and then demonstrating that at his deposition on January 18, 2011, he testified that most of the records had been in the custody of Mr. Judd since March of 2009. *Id.* He also testified at this deposition that a substantial amount of records had been in the personal custody of his son, Nick Balli, at his residence, and just found. *Id.* Plaintiff questions the credibility of Mr. Balli's statements. *Id.*

In addition to Mr. Balli and Mr. Judd's conflicting testimony regarding the location and custody of documents, plaintiff asserts that the depositions of NRL Las Vegas bookkeepers Melanie Bene and Rachel Erick demonstrate that defendants were tampering with or destroying evidence. *Id.* In the

depositions, it was revealed that defendant Dwight Bosworth came to Las Vegas and removed critical business records of NRL Rentals and took them to Texas, and that Mr. Balli removed NRL computers from the premises and had them "cleaned." *Id.* During a sanctions hearing, Maurice Riddle testified that he had custody of the NRL records removed from the NRL office, but that they disappeared after NRL filed bankruptcy. *Id.* Plaintiff asks this court to impose sanctions for the defendants' attempts to and acts of hiding or destroying business documents and records that are relevant in adjudicating this case. *Id.*

Defendants strongly dispute the allegation that they acted in any way inappropriate with regards to the records and documents in this case, and argue that the allegation is "not supported by any credible evidence." (#428). Defendants assert that at the deposition of Melanie Bene, a former employee, she "never identified any of the [d]efendants as being responsible for any spoilation of files or evidence." *Id.* She testified, defendants assert, that she didn't know who took the computers or files. *Id.* As to Mrs. Bene's testimony regarding "cleaning off" the computers, defendants argue that the term is being taken out of context. *Id.*

With regards to the allegation that Mr. Balli was deliberately lying about not knowing where documents were, defendants contend that the fact that the documents were later found at Nick Balli's home, "helps demonstrate that [d]efendants did not destroy any records." (#428). The defendants state that after NRL Rentals closed its doors, certain documents and records were delivered to various locations, including Nick Balli's girlfriend's house, because NRL had moved out of its lease space. *Id.* Therefore, defendants contend, it makes sense that the documents were eventually found there *and produced. Id.*

In the plaintiff's reply (#439), it reasserts its position that defendants destroyed records, concealed evidence, and lied about documents, and continues its request for sanctions. The plaintiff does not specifically mention Melanie Bene's deposition or the documents uncovered at Nick Balli's girlfriend's house in the reply. *Id.*

8

**2.     Discussion**

In reviewing Melanie Bene's deposition transcript, she stated that computers would be gone some days and then they would return, and that she was told they were being cleaned up. (#46 Exhibit K). She also stated that "sometimes clean up means getting it back to top speed because those computers weren't new. Even my computer had glitches, and things ran slow." *Id.* She indicated that she was told not to worry about the missing computers or drawers of files that had been cleaned out over-night. *Id.* So, although she did state that computers and drawers of documents went missing, the plaintiff's characterization of her testimony, that she testified that the computers were cleaned up to delete the information, is not completely accurate. Even so, it is troubling to the court if files were disappearing and computers were taken from the locations without explanation.

As defense counsel noted in the hearing, no evidentiary hearing has taken place, and the court has not been afforded the opportunity to fully explore the spoilation allegations. The court finds that the appropriate means to plaintiff's requested relief is through the filing of a motion in limine with the district judge. Thus, this court will not strike documents based on the spoilation allegations.

**D.     Verification Issue**

**1.     Background/Argument**

Plaintiff argues that defendants' responses, disclosures and documents should be stricken because defendants failed to verify them after several attempts by plaintiff to have defendants provide verification. (#416-1). In the opposition (#428), defendants blame the verification issue on former defense counsel who had asserted a retaining lien on defendants' file based on payment issues. Defendants' counsel Mr. Judd expresses that he "is informed and believes that [d]efendants did, in fact, provide interrogatory verifications to [prior counsel], and that those verifications were either produced to [p]laintiff or remain in the file to which the retaining lien relates." (#428). In plaintiff's reply (#439), it reasserts its position that the failure to verify warrants sanctions. Plaintiff argues that all defendants had to do was now provide verification to the plaintiff, and the fact that they have not, proves that they

1 cannot stand behind the "legitimacy of a discovery request, a response thereto, or an objection." (#439).

2 The plaintiff's reply was filed on May 4, 2011. *Id.* On October 10, 2011, attorney Terry J. Care
3 of McDonald Carano Wilson, LLP, filed a supplement to defendants' opposition. (#516). Attached to
4 the supplement is 29 signed verifications to answers to interrogatories for each of the 29 remaining
5 defendants. (#516 Exhibit B). Mr. Care asserts that he was finally able to obtain the verifications from
6 former counsel (#516 Exhibit A), and that he emailed the verifications to opposing counsel upon their
7 receipt on October 7, 2011. Mr. Care also explains that he found a certificate of service (#516 Exhibit
8 D) for a disc containing answers to interrogatories and responses to document requests from the 29
9 defendants. The verifications on the disc are unsigned, but the file counsel obtained contained hard
10 copies of the 29 verifications. (#516). Defendants "emphasize[d] that submission of [the] [s]upplement
11 is intended to demonstrate only that they have signed the verifications [p]laintiff has previously asserted
12 they had not signed." *Id.* Plaintiff filed a response to the supplement (#527), asserting that the court
13 should strike the untimely supplement and the 29 verifications, and grant the original motion to strike.
14 Plaintiff's position is that since the defendants chose to provide the verifications *after* discovery ended
15 on September 17, 2011, the purpose of the disclosure is to try to re-open discovery so that defendants
16 can conduct depositions that they never took during discovery. (#527). Further, plaintiff states that
17 since defendants "apparently had the verifications but kept them from [p]laintiff's counsel," the court
18 should "treat them as if they do not exist." *Id.*

19 In defendants' reply (#531), they contend that the "sole purpose in filing its...supplement[] was
20 to apprise the court of the existence of their previously unproduced signed verifications to answers to
21 interrogatories." Defendants argue that they were not attempting to re-open discovery, to act like they
22 previously disclosed the verifications, or to imply that plaintiff had the signed verifications all along.
23 (#531). Rather, defendants contend that they simply filed the supplement because "the newly
24 discovered information is relevant to the three pending discovery motions." *Id.*

25 . . .

26
10

### 2. Discussion

As the defendants assert that they were unable to obtain these verifications from former counsel, and were not deliberately keeping them from plaintiff, the court will not strike the verifications. In plaintiff's motion, it sought only to receive the verifications, and continuously stated that all defendants had to do was provide them to plaintiff. During the hearing, plaintiff's counsel represented to the court that since it could not rely on the verifications as they were provided *after* the discovery cut-off date, they are worthless and should be treated as such. The court notes that the verifications did exist, and were not created or falsified after the fact, and that their late production has not had any impact on the litigation. Therefore, as the verifications have been provided, the request for sanctions is moot.

## Motion To Extend Discovery Deadline (#490)

### 1. Background/Argument

In defendants' motion to extend discovery deadline (#490), they ask this court to extend discovery at least forty-five (45) days from the time the court rules on the motion. Defendants state that this extension is necessary because they need to conduct several depositions, and the plaintiff has refused to agree to the extension or to setting the depositions. (#490). Defense counsel asserts that the depositions were not conducted earlier because counsel "simply wasn't prepared financially until very recently to engage in the discovery which, ideally, [d]efendants would have pursued long ago." *Id.* There are five individuals that defendants wish to depose. *Id.* Defendants contend that plaintiff will not be prejudiced by the extension, as no trial date has been set and the extension would only permit limited discovery. *Id.*

In opposition (#495), plaintiff points out that "no less than three law firms or attorneys out of five representing the [d]efendants have resigned." However, plaintiff asserts, present counsel was "fully appraised from (at least) the [p]laintiff's responses to discovery...of the names and knowledge of the [p]laintiff's witnesses/employees and the availability of documents for inspection...," and that there is no reason that depositions could not have been conducted within the time-frame allotted. (#495).

1 Plaintiff concludes that the "only reason that the [d]efendants have not conducted any depositions is
2 because they did not want to pay their lawyer to take them." *Id.* This, plaintiff argues, is not "cause"
3 to extend discovery, and defendants should not be rewarded for their "self-created problem." *Id.* The
4 plaintiff asserts that it will be prejudiced by any extension because witnesses that defendants wish to
5 depose are located in several different states and plaintiff is ready to go to trial. *Id.* Plaintiff argues that
6 this delay tactic of nonpayment is "abusive," and the court should not reward them by granting the
7 extension. *Id.*

In addition to their opposition, plaintiff filed a notice (#496) containing exhibits and a supplement (#497) presenting deposition testimony from defendant Dwight Bosworth. In the supplement, plaintiff provides the court with excerpts from defendant Dwight Bosworth's deposition conducted on September 12, 2011, in an attempt to demonstrate that Dwight and his brother made a "calculated decision to abstain from paying their attorneys until recently." (#497). In the rough draft, unedited, uncertified transcript, defendant Bosworth states that "its been a very costly fight against Volvo," "so sometimes it takes some time to get the capital needed." (#497-1). Bosworth also states in the deposition that he and his brother made the decision to fund the depositions in August, and that prior to that, they paid bills and themselves "to the best of the ability." *Id.* Bosworth concedes that it is a true statement that they "paid some bills, but...decided not to give Mr. Care any money to take depositions." *Id.* He also states that they did not pay the attorneys until recently, and that recently his attorney was paid "an amount of billings that allowed him to be comfortable to move forward and take depositions." *Id.*

In the court's minute order requiring plaintiff to file a response to the present motion (#491), the court stated that no reply was required. However, in light of the supplement, defendants filed a reply and requested that the court consider it. (#498). In the reply, defendants argue that plaintiff took the deposition testimony out of context, and that the testimony actually reveals that Dwight and his brother "did the best they could to satisfy the various financial obligations – including attorneys' fees..." *Id.*

12

Defendants contend that nothing in the testimony can be "interpreted to support the conclusion that any of the [d]efendants deliberately avoided paying their attorneys in order to hinder or delay the judicial process." *Id.*

**2. Discussion**

The court finds that defendants are entitled to conduct the requested depositions, and that conducting the depositions will not prejudice the plaintiff. The court will permit defendants to conduct the five depositions, but will not extend discovery for any other purpose. The parties shall meet and confer regarding conducting the depositions at a time and place amenable for all parties. The depositions shall take place within forty-five days from the date of the hearing on this motion. The defendants shall bear the costs of the depositions, including, but not limited to, plaintiff's attorney's fees. Plaintiff shall provide the court with an affidavit and supporting documentation demonstrating their fees and costs incurred as a result of the depositions. The joint pretrial order shall be filed on or before March 1, 2012.

**Motion For Protective Order (#499)**

**1. Background/Argument**

Defendants filed their motion to extend discovery on August 31, 2011 (#490), and, in the event that the court denied the motion, defendants noticed the depositions of several individuals to take place on September 15th, 16th, and 19th[5], prior to the discovery cut-off. In the present motion for protective order (#499) filed on September 13, 2011, plaintiff asks this court to permit the plaintiff to abstain from attending the "last minute depositions, scheduled throughout the country over the next three days." The discovery cut-off date was September 19, 2011. Plaintiff asks this court to "permanently bar [d]efendants from taking the...depositions and from requesting further document production." (#499).

---

[5] The defendants noticed deposition of Marty Moore for September 15, 2011, in Omaha, which is the same day that the deposition of Sheri Whatley was scheduled to take place. Defendants also scheduled the deposition of Barry Natwick and Evan Brumm on September 16, 2011, in Pennsylvania, and the deposition of non-party VFS in North Carolina that same day. Defendants scheduled the deposition of George Swartz in Las Vegas on September 19, 2011.

13

**2.    Discussion**

As the court is permitting the defendants to conduct the five depositions, the motion for protective order is denied. The depositions shall proceed in the manner discussed above.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff Volvo Construction Equipment Rents, LLC's Motion To Strike And Permanently Exclude Defendants' Discovery Responses And Disclosures Pursuant to Fed. R. Civ. P. 26 And For Additional Sanctions (#416) is DENIED as discussed herein. Defendants are not permitted to introduce into evidence at trial any documents not already produced in discovery.

IT IS FURTHER ORDERED that defendants' Motion To Extend Discovery Deadline (#490) is GRANTED in part and DENIED in part, as discussed above. The defendants shall conduct the five depositions within forty-five days from the date of the hearing. Discovery is not extended for any other purpose. The defendants shall bear the costs of the depositions, and plaintiff shall provide the court with an affidavit demonstrating its reasonable costs and fees incurred as a result of the depositions. The parties' joint pretrial order shall be filed on or before March 1, 2012.

IT IS THEREFORE ORDERED that plaintiff's Motion For Protective Order (#499) is DENIED.

DATED this 8th day of December, 2011.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**