1  TERRY J. CARE, ESQ.
   Nevada Bar No. 4560
2  PATRICK J. MURCH, ESQ.
   Nevada Bar No. 10162
3  McDONALD CARANO WILSON LLP
   2300 West Sahara Avenue, Suite 1000
4  Las Vegas, Nevada  89102
   Telephone:  (702) 873-4100
5  Facsimile:  (702) 873-9966
   tcare@mcdonaldcarano.com
6  pmurch@mcdonaldcarano.com

7  *Attorneys for NRL San Antonio,*
   *NRL Texas, Bosworth Defendants,*
8  *and Marine Quest Defendants*

9              **UNITED STATES DISTRICT COURT**

10                  **DISTRICT OF NEVADA**

11 VOLVO   CONSTRUCTION   EQUIPMENT       Case No.:  2:09-cv-00032
   RENTS, INC.,
12
              Plaintiff,
13
   vs.
14
                                                        **ORDER GRANTING**
15 NRL  TEXAS  RENTALS,  LLC,  NRL  SAN   **DEFENDANTS' MOTION FOR**
   ANTONIO   RENTALS,   LP,   NRL   HIGH   **JUDGMENT PURSUANT TO FED. R.**
   ACCESS,  LLC,  VEGAS  RENTS,  LLC,      **CIV. P. 52(c)**
16 LARRY  CHAVEZ,  BOSWORTH  FARMS,
   INC.,  DWIGHT  BOSWORTH,  MARCEL
17 BOSWORTH,   MARINA   QUEST,   INC.,
   MARINE    QUEST-JOE    POOL,    INC.,
18 MARINE  QUEST-TEXOMA,  LP,  MARINE
   QUEST  TEXOMA  II,  LP,  MARINE  QUEST-
19 CAPTAINS   COVE,   LP,   MARINE   QUEST-
   EAGLE  MOUNTAIN,  LP,  MARINE  QUEST-
20 ANDERSON  MILL,  LP,  MARINE  QUEST-
   MARSHALL  FORD,  LP,  MARINE  QUEST-
21 HARBOR  ONE,  LP,  MARINE  QUEST-BOZ
   I, LP, MARINE QUEST-HIDDEN COVE LP,
22 MARINE     QUEST-EXECUTIVE,     LP,
   MARINE         QUEST-CHANDLER'S
23 LANDING,  LP,  MARINE  QUEST-LAKE
   COUNTRY,    LP,    MARINE    QUEST-
24 INVESTMENTS, LP, TARRANT  COUNTY
   MARINE  ENTERPRISES,  INC.,  LAKE
25 COUNTRY    MARINA,    INC.,    ELITE
   MARINE       MANAGEMENT,       LLC,
26 JEFFERSON   BANK,   PLAINSCAPITAL
   BANK,
27
                  Defendants.
28

This matter was tried to the bench on December 3-6, 2012.  Following the close of the case-in-chief of plaintiff Volvo Construction Equipment Rents, Inc. (<u>Volvo Rents</u>), defendants Marcel Bosworth (<u>Marcel</u>), Dwight Bosworth (<u>Dwight</u>) (collectively, the <u>Bosworths</u>), Bosworth Farms, Inc. (<u>Bosworth Farms</u>), Bosworth Nevada Investments, LLC (<u>Bosworth Nevada Investments</u>) and Marina Quest, Inc.; Marine Quest-Joe Pool, Inc.; Marine Quest-Texoma, LP; Marine Quest Texoma II, LP; Marine Quest-Captains Cove, LP; Marine Quest-Eagle Mountain, LP; Marine Quest-Anderson Mill, LP; Marine Quest-Marshall Ford, LP; Marine Quest-Harbor One, LP; Marine Quest-Boz I, LP; Marine Quest-Hidden Cove LP; Marine Quest-Executive, LP; Marine Quest-Chandler's Landing, LP; Marine Quest-Lake Country, LP; Marine Quest-Investments, LP; Lake Country Marina, Inc.; Elite Marine Management, LLC, and Tarrant County Marina Enterprises, Inc. (collectively, the <u>Marine Quest Defendants</u> and, with the Bosworths, Bosworth Nevada Investments, and Bosworth Farms, <u>Defendants</u>) made an oral motion for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure.  Defendants were represented at the trial by Terry J. Care, Esq., and Patrick J. Murch, Esq., of the law firm of McDonald Carano Wilson LLP, and Raymund C. King, M.D., Esq., of the Law Offices of Raymund C. King, MD, JD, PLLC.  Volvo Rents was represented by James D. Kilroy, Esq., Brian P. Gaffney, Esq., and Paul S. Pryor, Esq., of the law firm of Snell & Wilmer, L.L.P.

The Court, having considered the relevant testimonial and documentary evidence, having heard the parties' respective arguments, and good cause appearing therefore, finds and orders as follows:

## <u>FINDINGS OF FACT</u>

### I. STIPULATED FINDINGS OF FACT

The parties stipulated to the following facts:

**<u>Venue</u>.**

1. Venue is proper in the United States District Court for the District of Nevada.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

**Remaining Parties.**[1]

2.      Volvo Rents is a Delaware corporation.

3.      Defendant NRL Texas Rentals, LLC (NRL Texas) is a Texas limited liability company.

4.      Defendant NRL San Antonio Rentals, LP (NRL San Antonio) is a Texas limited partnership.

5.      Defendant NRL High Access, LLC was a Nevada limited liability company.

6.      Bosworth Nevada Investments is a Nevada limited liability company with a revoked status.

7.      Bosworth Farms is a Texas corporation.

8.      Marina Quest, Inc. is a Texas corporation.

9.      Marine Quest-Joe Pool, Inc. is a Texas corporation.

10.     Marine Quest-Texoma, LP is a Texas limited partnership.

11.     Marine Quest-Texoma II, LP is a Texas limited partnership.

12.     Marine Quest-Captain's Cove, LP is a Texas limited partnership.

13.     Marine Quest-Eagle Mountain, LP is a Texas limited partnership.

14.     Marine Quest-Anderson Mill, LP is a Texas limited partnership.

15.     Marine Quest-Marshall Ford, LP is a Texas limited partnership.

16.     Marine Quest-Harbor One, LP is a Texas limited partnership.

17.     Marine Quest-Boz I, LP is a Texas limited partnership.

18.     Marine Quest- Hidden Cove LP is a Texas limited partnership.

19.     Marine Quest-Executive, LP is a Texas limited partnership.

20.     Marine Quest-Chandler's Landing, LP is a Texas limited partnership.

21.     Marine Quest-Lake Country, LP is a Texas limited partnership.

22.     Marine Quest-Investments, LP is a Texas limited partnership.

---

[1]   Volvo Rents' claims against PlainsCapital Bank and Jefferson Bank were summarily adjudicated in favor of the banks and against Volvo Rents (## 276 and 407, respectively); its claims against the R. & H.P. Balli Family Trust and Nick Balli were dismissed by stipulation (## 550 and 599, respectively); and default was entered against Larry Chavez (#188).  Chavez was not represented by counsel for Defendants.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

23.     Tarrant County Marina Enterprises, Inc. is a Texas corporation.

24.     Lake Country Marina, Inc. is a Texas corporation.

25.     Elite Marine Management, LLC is a Texas limited liability company.

**Additional Relevant Parties.**

26.     Defendant NRL Rentals, LLC (<u>NRL Rentals</u>) is a Nevada limited liability company with a revoked status.[2]

27.     Roberto Balli (<u>Balli</u>) is a resident of Texas.[3]

**Ownership of Defendants.**

**NRL Rentals.**

28.     NRL Rentals is owned 40% by Balli and 60% by Bosworth Nevada Investments.

29.     Bosworth Nevada Investments is owned by Dwight (33.33%), Marcel (33.3%), and non-party Mark Thomas (33.3%).

**NRL San Antonio.**

30.     NRL San Antonio is owned by NRL Texas (1%), Dwight (28%), Marcel (28%), Balli (28%), and non-party Marion 'Butch' Thomas (15%).

31.     NRL Texas is owned by Balli (100%).

32.     NRL Texas is the general partner of NRL San Antonio.

33.     Dwight, Marcel, Balli, and Butch Thomas are the limited partners of NRL San Antonio.

**Marine Quest Defendants and Bosworth Farms.**

34.     Marina Quest, Inc. is the general partner and owner of a 1% interest in the following entities: Marine Quest-Texoma, LP; Marine Quest Texoma II, LP; Marine Quest-

---

[2]   NRL Rentals filed a voluntary Chapter 11 bankruptcy petition in the United States District Court for the District of Nevada (the <u>Bankruptcy Court</u>) on May 14, 2009. On August 14, 2009, the Bankruptcy Court entered an order converting NRL Rentals' Chapter 11 reorganization to a Chapter 7 liquidation.  On August 4, 2011, the Bankruptcy Court entered its Final Decree Discharge of Trustee and Closing of [NRL Rentals'] Chapter 7 Case.

[3]   On July 12, 2011, Bob Balli and his wife, Hilary Balli, filed a voluntary Chapter 7 bankruptcy petition in the Bankruptcy Court. The Bankruptcy Court entered an order discharging the Ballis' bankruptcy on October 12, 2011.

Captains Cove, LP; Marine Quest-Eagle Mountain, LP; Marine Quest-Anderson Mill, LP; Marine Quest-Marshall Ford, LP; Marine Quest-Harbor One, LP; Marine Quest-Boz I, LP; Marine Quest-Hidden Cove LP; Marine Quest-Executive, LP; Marine Quest-Chandler's Landing, LP; Marine Quest-Lake Country, LP; and Marine Quest-Investments, LP.

35.    Dwight is a limited partner and owner of a 49.5% interest in the following entities: Marine Quest-Texoma, LP; Marine Quest Texoma II, LP; Marine Quest-Captains Cove, LP; Marine Quest-Eagle Mountain, LP; Marine Quest-Anderson Mill, LP; Marine Quest-Marshall Ford, LP; Marine Quest-Harbor One, LP; Marine Quest-Boz I, LP; Marine Quest-Hidden Cove LP; Marine Quest-Executive, LP; Marine Quest-Chandler's Landing, LP; Marine Quest-Lake Country, LP; and Marine Quest-Investments, LP.

36.    Marcel is a limited partner and owner of a 49.5% interest in the following entities: Marine Quest-Texoma, LP; Marine Quest Texoma II, LP; Marine Quest-Captains Cove, LP; Marine Quest-Eagle Mountain, LP; Marine Quest-Anderson Mill, LP; Marine Quest-Marshall Ford, LP; Marine Quest-Harbor One, LP; Marine Quest-Boz I, LP; Marine Quest-Hidden Cove LP; Marine Quest-Executive, LP; Marine Quest-Chandler's Landing, LP; Marine Quest-Lake Country, LP; and Marine Quest-Investments, LP.

37.    Dwight owns a 50% interest in the following entities:  Marina Quest, Inc.; Elite Marina Management, LLC; Lake Country Marina, Inc.; Tarrant County Marina Enterprises, Inc; Marine Quest-Joe Pool, Inc.; and Bosworth Farms.

38.    Marcel owns a 50% interest in the following entities:  Marina Quest, Inc.; Elite Marina Management, LLC; Lake Country Marina, Inc.; Tarrant County Marina Enterprises, Inc.; Marine Quest-Joe Pool, Inc.; and Bosworth Farms.

**Franchise and Development Agreements.**

**Las Vegas.**

39.    On December 10, 2004, Barry Natwick (Natwick), in his capacity as President of Volvo Rents, and Balli, in his capacity as a member of NRL Rentals, executed and caused Volvo Rents and NRL Rentals to enter into a Franchise Agreement (the Las Vegas Franchise Agreement), pursuant to which, among other things, NRL Rentals was authorized to establish a

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

1   Volvo Rents construction equipment rental franchise in Las Vegas, Nevada.  Trial Exhibit (TE)

2   12.

3         **Reno.**

4         40.    On December, 20, 2005, Volvo Rents and NRL Rentals entered into a separate

5   Franchise Agreement (the Reno Franchise Agreement), pursuant to which, among other things,

6   NRL Rentals was authorized to establish a Volvo Rents franchise in Reno, Nevada.

7         41.    On April 15, 2006, Natwick, in his capacity as President and CEO of Volvo

8   Rents, and Balli, in his capacity as managing member of NRL Rentals, executed and caused

9   Volvo Rents and NRL Rentals to enter into a Termination and Release Agreement, pursuant to

10  which, among other things, Volvo Rents agreed to terminate the Reno Franchise Agreement and

11  apply the $35,000 franchise fee paid in connection therewith to franchise locations to be opened

12  by NRL Rentals in the Dallas/Fort Worth area.  TE 21.

13        **Dallas/Fort Worth.**

14        42.    On or about February 2, 2006, Natwick, in his capacity as President and CEO of

15  Volvo Rents, and Balli, in his capacity as managing member of NRL Rentals, executed and

16  caused Volvo Rents and NRL Rentals to enter into that certain Deposit Agreement pursuant to

17  which, among other things, NRL Rentals made a $5,000.00 deposit on the Dallas/Ft. Worth area

18  as a territory for opening future Volvo Rents franchises.  TE 24.

19        43.    On March 31, 2006, Natwick, in his capacity as President and CEO of Volvo

20  Rents, and Balli, in his capacity as manager of NRL Rentals, caused Volvo Rents and NRL

21  Rentals to enter into a Franchise Agreement (the Dallas Franchise Agreement) to establish four

22  Volvo Rents franchise locations in Dallas, Rockwall, and Ellis Counties, Texas.  TE 13.

23        44.    The Dallas Franchise Agreement was later terminated by mutual agreement.

24        **San Antonio.**

25        45.    On March 31, 2006, Natwick, in his capacity as President and CEO of Volvo

26  Rents, and Balli, in his capacity as a member of NRL Rentals, executed and caused Volvo Rents

27  and NRL Rentals to enter into a Volvo Construction Equipment Rents Franchise Agreement (the

28  San Antonio Franchise Agreement and, collectively with the Las Vegas Franchise Agreement,

the <u>Franchise Agreements</u>), pursuant to which, among other things, NRL Rentals was permitted to establish a Volvo Rents franchise in or around San Antonio, Texas.  TE 675.

46.     On August 1, 2006, Evan Brumm, in his capacity as Director of Finance for Volvo Rents, sent Balli a letter approving the transfer of the ownership of NRL Rentals' development rights and franchise rights to the San Antonio area from NRL Rentals to NRL San Antonio.  TE 17.  The letter provides, among other things:

> "Effective immediately, the Development Agreement executed on March 31, 2006 by NRL Rentals, LLC for the San Antonio area, with development rights for the following counties in Texas: Comal, Gillespie, Gonzales, Guadalupe, Karnes, Kendall, Wilson, Atascosa, Bandera, Bexar, Frio, Kerr, and Medina will be transferred to NRL San Antonio Rentals, LP;" and

> "Effectively immediately, the Franchise Agreement executed by NRL Rentals, LLC on March 31, 2006 for the Approved Territory of the following counties in Texas: Comal, Gillespie, Gonzales, Guadalupe, Karnes, Kendall, and Wilson will be transferred to NRL San Antonio Rentals, LP."

**<u>Loan Documents and Related Agreements.</u>**

**Las Vegas.**

47.     On December 10, 2004, Balli executed and delivered a Guarantee, Indemnification, and Acknowledgment to Volvo Rents, pursuant to which, among other things, Balli guaranteed all payments that NRL Rentals owed to Volvo Rents under the Las Vegas Franchise Agreement.

48.     On February 2, 2005, Volvo Rents filed a UCC-1 Financing Statement (Document No. 2005003937-0) (the <u>Volvo Rents Las Vegas Financing Statement</u>) with the Nevada Secretary of State.  The Volvo Rents Las Vegas Financing Statement covered the following collateral: "All inventory sold directly or indirectly to [NRL Rentals] by [Volvo Rents] that is financed by [Volvo Rents]; and all proceeds and products of any and all of the foregoing . . . ." TE 18.

49.     On March 9, 2005, VFS US LLC, a Delaware limited liability company, also known as Volvo Commercial Finance, a division of VFS US LLC (<u>VFS</u>), filed a UCC-1 Financing Statement (Document No. 2005007052-8) (the <u>VFS Las Vegas Financing Statement</u>) with the Nevada Secretary of State.  The VFS Las Vegas Financing Statement covered the

following collateral:

All inventory of Debtor [NRL Rentals], whether now owned or hereafter acquired by Debtor and wherever located, including without limitation (i) all new and used construction equipment, mini-excavators, backhoes, loaders, forklifts, generators, trucks, compressors, lawn equipment, small generators, concrete equipment, trailers, trenchers, air tools, small compressors, ladders, power tools, hoists, and specialty hand tools, and other assets used in the construction, commercial industrial, agricultural, and homeowner markets, as well as replacement parts, accessories and attachments pertaining thereto; (ii) all other Goods, merchandise, raw materials, work in progress, finished goods, and other tangible personal property held for sale or lease (including, but not limited to, any Goods provided by Secured Party to Debtor on Consignment) or furnished under contracts of service or used or consumed in Debtor's business; and (iii) all Documents now or hereafter evidencing any such Inventory; and all proceeds of the foregoing, whether cash or non-cash. All Accounts including insurance proceeds, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred; all Payment Intangibles, Promissory Notes, Letters of Credit, Deposit Accounts, service contracts, warranties, Documents, Records, General Intangibles, Instruments, Chattel Paper, Electronic Chattel Paper, and lease and rental agreements, whether now owned or hereafter acquired by Debtor and whether now existing or hereafter arising, and all proceeds of the foregoing whether cash or non-cash. All Equipment, whether now owned or hereafter acquired by Debtor and wherever located; all Goods or Equipment owned by Secured Party and located on Debtor's premises for any purpose; and all proceeds thereof, whether cash or non-cash (but inclusion of proceeds shall not be deemed to imply that Secured Party consents to the sale or other transfer or disposition of any such Goods or Equipment). TE 19.

50.     On March 12, 2005, NRL Rentals and VFS executed and entered into a Security Agreement, pursuant to which, among other things, NRL Rentals granted VFS a security interest in the collateral described in the Las Vegas Financing Statement. TE 28.

51.     Also on March 12, 2005, Balli, in his capacity as managing member of NRL Rentals, executed and delivered a Rental Inventory Financing Agreement to VFS. VFS accepted the Rental Inventory Financing Agreement.  TE 29.

52.     Also on March 12, 2005, Balli, in his capacity as managing member of NRL Rentals, executed and caused NRL Rentals to deliver a promissory note in the original principal amount of $6,425,000.00 (the Las Vegas Promissory Note) to VFS. TE 30.

53.     Also on March 12, 2005, Balli executed and delivered a Guaranty and Subordination Agreement to Volvo Rents, pursuant to which, among other things, Balli

personally guaranteed the obligations of NRL Rentals to VFS.  TE 31.

54.     Also on March 12, 2005, Bosworth Nevada Instruments executed and delivered a Guaranty and Subordination Agreement to Volvo Rents, pursuant to which, among other things, Bosworth Nevada Investments guaranteed the obligations of NRL Rentals to VFS.  TE 32.

55.     On October 27, 2005, Balli, on behalf of NRL Rentals, executed that certain Certificate of Authority for Limited Liability Company, pursuant to which NRL Rentals represented and warranted to Volvo Rents that NRL Rentals had delivered certain documents to Volvo Rents.  TE 15.

56.     On or about May 1, 2006, Natwick, in his capacity as President and CEO of Volvo Rents, and Balli, in his capacity as a Member of NRL Rentals, caused Volvo Rents and NRL Rentals to execute and enter into a Security Agreement – Revised.  TE 25.

57.     On October 12, 2006, NRL Rentals and VFS executed and entered into an Amendment to Rental Inventory Financing Agreement.  TE 34.

58.     Also on October 12, 2006, Balli, on behalf of NRL Rentals, executed and delivered an Amended and Restated Promissory Note (Rental Inventory Financing-Secured) to VFS.   Among other things, the Amended and Restated Promissory Note constituted a restatement of, and replacement and substitution for, the Las Vegas Promissory Note.  TE 35.

59.     Also on October 12, 2006, Balli, in his capacity as managing member of NRL Texas, as general partner of NRL San Antonio, executed a Guaranty and Subordination Agreement, pursuant to which, among other things, NRL San Antonio guaranteed the obligations of NRL Rentals to VFS.  TE 39.[4]

**San Antonio.**

60.     On August 23, 2006, Volvo Rents filed a UCC Financing Statement (Document No. 141646090002, File No. 06-0028345977) (the <u>Volvo Rents San Antonio Financing Statement</u>) with the Texas Secretary of State.   The Volvo Rents San Antonio Financing Statement covered "All Inventory sold directly or indirectly to [NRL San Antonio] by [Volvo

---

[4]   The documents in this section are collectively referred to herein as the <u>Las Vegas Loan Documents</u>.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Rents] that is financed by [Volvo Rents]; and all proceeds and products of any and all of the foregoing . . . ." TE 40.

61.    On September 29, 2006, VFS filed a UCC Financing Statement (Document No. 145998440002, Filing No. 06-0032455297) (the VFS San Antonio Financing Statement) with the Texas Secretary of State. The VFS San Antonio Financing Statement covered the following collateral:

> All inventory of Debtor [NRL San Antonio], whether now owned or hereafter acquired by Debtor and wherever located, including without limitation (i) all new and used construction equipment, mini-excavators, backhoes, loaders, forklifts, generators, trucks, compressors, lawn equipment, small generators, concrete equipment, trailers, trenchers, air tools, small compressors, ladders, power tools, hoists, and specialty hand tools, and other assets used in the construction, commercial industrial, agricultural, and homeowner markets, as well as replacement parts, accessories and attachments pertaining thereto; (ii) all other Goods, merchandise, raw materials, work in progress, finished goods, and other tangible personal property held for sale or lease (including, but not limited to, any Goods provided by Secured Party to Debtor on Consignment) or furnished under contracts of service or used or consumed in Debtor's business; and (iii) all Documents now or hereafter evidencing any such Inventory; and all proceeds of the foregoing, whether cash or non-cash. All Accounts including insurance proceeds, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred; all Payment Intangibles, Promissory Notes, Letters of Credit, Deposit Accounts, service contracts, warranties, Documents, Records, General Intangibles, Instruments, Chattel Paper, Electronic Chattel Paper, and lease and rental agreements, whether now owned or hereafter acquired by Debtor and whether now existing or hereafter arising, and all proceeds of the foregoing whether cash or non-cash. All Equipment, whether now owned or hereafter acquired by Debtor and wherever located; all Goods or Equipment owned by Secured Party and located on Debtor's premises for any purpose; and all proceeds thereof, whether cash or non-cash (but inclusion of proceeds shall not be deemed to imply that Secured Party consents to the sale or other transfer or disposition of any such Goods or Equipment). TE 41.

62.    On September 27, 2006, VFS filed a UCC Financing Statement Amendment with the Texas Secretary of State (Document No. 149253890002, Filing No. 06-00356366), changing the address of NRL San Antonio to 616 S. Kimball, Southlake, Texas 76092.

63.    On October 10, 2006, Balli, in his capacity as member and manager of NRL Texas Rentals, as general partner of NRL San Antonio, executed and delivered a Rental Inventory Financing Agreement to VFS.    VFS accepted the Rental Inventory Financing

Agreement.  TE 44.

64.    Also on October 10, 2006, Balli, on behalf of NRL San Antonio, executed and delivered a promissory note in the original principal amount of $4,125,000.00 (the San Antonio Promissory Note) to VFS.  TE 45.

65.    Also on October 10, 2006, Balli, in his capacity as member and manager of NRL Texas Rentals, as general partner of NRL San Antonio, executed a Security Agreement, pursuant to which, among other things, NRL San Antonio granted VFS a security interest in the collateral described in the VFS San Antonio Financing Statement to secure the San Antonio Promissory Note.  TE 42.

66.    Also on October 10, 2006, NRL Rentals and VFS executed a Retail Finance Plan Agreement.  TE 43.

67.    Also on October 10, 2006, Balli executed and delivered a Guaranty and Subordination Agreement to VFS, pursuant to which, among other things, Balli guaranteed NRL San Antonio's obligations to VFS.  TE 36.

68.    Also on October 10, 2006, Balli, in his capacity as managing member of NRL Rentals, executed and delivered a Guaranty and Subordination Agreement to VFS, pursuant to which, among other things, NRL Rentals guaranteed NRL San Antonio's obligations to VFS. TE 37.

69.    Also on October 10, 2006, Balli, in his capacity as manager of NRL Texas, executed and delivered a Guaranty and Subordination Agreement to VFS, pursuant to which, among other things, NRL Texas Rentals guaranteed NRL San Antonio's obligations to VFS.  TE 35.[5]

**Guaranties Between Volvo Rents and VFS.**

70.    On March 11, 2005, Natwick, in his capacity as President and CEO of Volvo Rents, executed and caused Volvo Rents to deliver a Guaranty to VFS, pursuant to which, among other things, Volvo Rents guaranteed all of the obligations of NRL Rentals to VFS.  TE 49.

_____

[5] The documents referenced in this section are collectively referred to herein as the San Antonio Loan Documents.

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

71. On October 12, 2006, Natwick, in his capacity as President and CEO of Volvo Rents, executed and caused Volvo Rents to deliver a guaranty to VFS, pursuant to which, among other things, Volvo Rents guaranteed all of the obligations of NRL San Antonio to VFS. TE 50.

**Assignment of Loan Documents from VFS to Volvo Rents.**

72. On December 16, 2008, VFS assigned all of its right, title, and interest in and to the Las Vegas Loan Documents to Volvo Rents. TE 51.

73. Also on December 16, 2008, VFS assigned all of its right, title, and interest in and to the San Antonio Loan Documents to Volvo Rents. TE 379.[6]

**Termination of Franchise Agreements.**

74. On January 8, 2009, Marty Moore (Moore), Vice President of North America for Volvo Rents, sent a letter to Balli, stating that the Las Vegas Franchise Agreement was terminated. TE 52.

75. Also on January 8, 2009, Moore sent a separate letter to Balli, stating that the San Antonio Franchise Agreement was terminated. TE 53.

## II. ADDITIONAL FINDINGS OF FACT

76. Any finding of fact containing a conclusion of law is also a conclusion of law. Any conclusion of law containing a finding of fact is also a finding of fact.

**Business of Volvo Entities.**

**Volvo Rents.**

77. At all times relevant to the allegations in Volvo Rents' complaint, Volvo Rents was engaged in the business of establishing independently-owned construction equipment rental franchises in the United States and Canada.

**VFS.**

78. Among other things, at all times relevant to the allegations in Volvo Rents' complaint, VFS was engaged in the business of lending funds to Volvo Rents franchisees for the

---

[6] In June 2011, the Court entered its Order (#459) on Volvo Rents' Motion for Partial Summary Judgment (#421), wherein it determined that, with the exception of NRL Rentals (which was in bankruptcy), the parties to the Las Vegas Loan Documents and the San Antonio Loan Documents breached the agreements contained therein. Judgment was entered in favor of Volvo Rents and against NRL San Antonio in the approximate principal amount of $10 million.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

purchase of rental equipment.

**Initiation of Relationship Between Volvo Rents and Defendants.**

79.     In late summer/early fall 2004, Balli responded to an advertisement in a Las Vegas newspaper, wherein Volvo Rents announced that it was seeking qualified individuals to open and operate construction equipment rental franchises.

80.     Volvo Rents was interested in awarding Balli a franchise because he had more than 15 years' experience in the construction equipment rental industry.  However, Volvo Rents would not approve Balli's initial franchise application because his personal net worth was insufficient to meet Volvo Rents' minimum financial requirements on his own.

81.     Balli attempted to partner with several investors  (some of whom were recommended by Volvo Rents), but was unable to locate any individuals with sufficient assets to satisfy Volvo Rents' requirements.

82.     Volvo Rents asked Balli if he knew of any potential investors.

83.     Accordingly, Balli eventually requested that his high school friends, the Bosworths, who own and operate several marinas and related businesses in Texas, invest in the franchise.

84.     Although the Bosworths had no experience in the construction equipment rental arena, they agreed to invest in the franchise on the following conditions:  (a) they would be silent partners/investors; (b) Balli would operate the franchise; and (c) they would not personally guarantee any loans advanced for purposes of purchasing rental equipment.

85.     Prior to the execution of the Las Vegas Franchise Agreement, the Bosworths participated in a few 'high level' communications with Natwick and Jerry Baker, a sales manager for Volvo Rents.  The majority of communications regarding the Las Vegas franchise prior to the execution of the Las Vegas Franchise Agreement occurred between Balli and Baker, Natwick, and/or other Volvo employees.

86.     Approximately three weeks after the Las Vegas Franchise Agreement was executed, Marcel and Dwight submitted personal financial statements, tax returns, and other financial information to Volvo Rents.  Evan Brumm, Volvo Rents' Chief Financial Officer, had

1   no reason to believe that any of the Bosworths' financial information was false.

2        **Business Plans.**

3        87.     Following the execution of the Las Vegas Franchise Agreement, Balli and Volvo

4   employee Ed Spence collaborated to develop a business plan (the <u>Las Vegas Business Plan</u>) for

5   the Las Vegas franchise.  TE 11.

6        88.     Following the execution of the San Antonio Franchise Agreement, Marion

7   'Butch' Thomas submitted a business plan (the <u>San Antonio Business Plan</u> and, collectively with

8   the Las Vegas Business Plan, the <u>Business Plans</u>) for the San Antonio franchise to Volvo Rents.

9   TE 26

10       89.     Among other things, the Business Plans contained estimated projections for

11  equipment financing for the franchises.

12       90.     Neither Marcel nor Dwight signed or delivered either of the Business Plans to

13  Volvo Rents, nor did either of them participate in, or contribute to, the development or drafting

14  of either of the Business Plans.

15       91.     Neither of the Business Plans specified that Dwight and/or Marcel agreed to make

16  an investment of any amount into either of the franchises, nor did either of the Business Plans

17  require that Dwight and/or Marcel make an investment of any amount.

18       **Capitalization of Franchises.**

19            **General Capitalization Issues.**

20       92.     Neither of the Franchise Agreements contained any requirement that the

21  Bosworths, or either of them, inject any amount of capital into Bosworth Nevada Investments,

22  NRL Rentals, NRL San Antonio, NRL Texas, the Las Vegas franchise, or the San Antonio

23  franchise.

24       93.     Volvo Rents never informed Dwight that he was required to inject a specific

25  amount of capital into Bosworth Nevada Investments, NRL Rentals, NRL San Antonio, NRL

26  Texas, the Las Vegas franchise, or the San Antonio franchise.

27       94.     Volvo Rents never informed Marcel that he was required to inject a specific

28  amount of capital into Bosworth Nevada Investments, NRL Rentals, NRL San Antonio, NRL

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Texas, the Las Vegas franchise, or the San Antonio franchise.

95.    Dwight never promised Volvo Rents that he would inject a specific amount of capital into Bosworth Nevada Investments, NRL Rentals, NRL San Antonio, NRL Texas, the Las Vegas franchise, or the San Antonio franchise.

96.    Marcel never promised Volvo Rents that he would inject a specific amount of capital into Bosworth Nevada Investments, NRL Rentals, NRL San Antonio, NRL Texas, the Las Vegas franchise, or the San Antonio franchise.

97.    Volvo Rents never informed either of the Bosworths that they were required to maintain any minimum amount of capital or equity in either of the franchises.

98.    Volvo Rents did not have a minimum equity investment requirement for either of the franchises; only VFS had such a requirement.

**NRL San Antonio Capitalization Issues.**

99.    In October 2006, approximately 6-7 months after Balli began operating the San Antonio franchise, but prior to the time that VFS provided its initial credit advance for the purchase of equipment for the franchise, Volvo employee Mike Usher (Usher) requested that Balli provide him with proof that the San Antonio franchise was capitalized.  TE 164.

100.    Specifically, Usher informed Balli that "[t]he San Antonio business plan was built using an equity injection of $805,000 on day one,"[7] and requested that Balli "specify the equity injection to be made by each partner" in the San Antonio franchise.  Id.

101.    In response, Balli provided Usher with a facsimile entitled "Verification of Deposits," which contained excerpts of bank statements from an account held by NRL Rentals at PlainsCapital Bank.  TE 165.

102.    Balli also provided Usher with an email containing an attachment that evidenced a transfer in the amount of $149,000.00 from a PlainsCapital Bank holding account held in the names of Dwight and Marcel (the D&M Account) into the account held by NRL San Antonio at

---

[7]    Again, the Bosworths had no role in drafting or developing the San Antonio Business Plan, neither of them promised Volvo Rents that they would invest a specific amount of money into NRL San Antonio, NRL Texas, and/or the San Antonio franchise, and Volvo Rents did not inform either of the Bosworths that they were required to invest a specific amount of money into NRL San Antonio, NRL Texas, and/or the San Antonio franchise.

1   PlainsCapital Bank.

2   103.   Based on information communicated to him by Usher, Balli understood that

3   Volvo Rents was only requesting verification of deposits because it stood to collect the first

4   million dollars in financing from VFS for the San Antonio franchise, and VFS would not release

5   the funds until it obtained the verification.

6   104.   Usher never informed Balli that NRL San Antonio was required to retain any

7   amount of the deposits in its account.

8   105.   During an audit that Volvo Rents conducted in October 2008, Volvo Rents

9   discovered that, the day after NRL San Antonio received the $149,000.00 transfer, Balli caused

10   NRL San Antonio to transfer $149,000.00 out of its account.  The funds were distributed among

11   the D&M Account, several of the Marine Quest Defendants, and Kevin Lafferty, a contractor

12   who had performed work at one or more of the marinas.

13   106.   All of the transfers were tracked and/or reconciled by an internal controller and/or

14   third party accountants for the Marine Quest Defendants.

15   107.   Based on information communicated to them by Balli, the Bosworths understood

16   that Volvo Rents was only requesting verification that they had $149,000.00 at their disposal;

17   they did not understand that Volvo Rents was requesting or requiring that they deposit and/or

18   maintain any minimum amount of capital in the NRL San Antonio bank account.

19   **Capital Expenditures by the Bosworths.**

20   <u>Initial Capital Expenditures</u>.

21   108.   The Bosworths did not inject or invest any money directly into Bosworth Nevada

22   Investments.  However, they provided Balli with a significant amount of capital for the benefit of

23   Bosworth Nevada Investments and both franchises, including, among other things, funds for

24   franchise fees, rent, leasehold improvements (including fencing, gates, paving, painting, interior

25   construction, and signage), labor, furniture, fixtures, computers, phones, wash racks, and

26   equipment.

27   109.    The Bosworths also purchased and/or provided equipment for use by the

28   franchises, including, among other things, service and sales trucks.

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

110.    In addition, after the San Antonio Franchise Agreement was executed, but prior to the time that VFS provided its first credit advance for the purchase of equipment for the San Antonio franchise, Balli caused rental equipment that the Bosworths had purchased to be transferred from Las Vegas to San Antonio for use by the San Antonio franchise.

111.    The Bosworths' cash and equipment expenditures were necessary for the opening and operation of both the Las Vegas and San Antonio franchises because the franchises obtained "asset-only" financing:   VFS did not provide financing for any items other than rental equipment, and Volvo Rents did not provide any financing or equipment for any reason. Moreover, VFS did not provide financing until several months after the franchises opened and began conducting operations.

112.    Volvo Rents' forensic accounting expert, George Swarts, agreed that, in addition to cash, expenditures for rent, leasehold improvements, fixtures, equipment, and other items necessary for the opening and/or operation of the franchises could constitute capital expenditures.

<u>Additional Capital Expenditures</u>.

113.    On November 30, 2007, Balli obtained a personal loan (the <u>Balli Loan</u>) from PlainsCapital Bank in the principal amount of $435,000.00 for purposes of purchasing equipment and funding operations NRL Rentals.

114.    Marcel introduced Balli to PlainsCapital Bank.

115.    Balli was unable to repay the Balli Loan.

116.    Despite the fact that they had no obligation to PlainsCapital Bank relative to the Balli Loan, the Bosworths repaid the Balli Loan in full in order to protect their relationship with PlainsCapital Bank.

117.    The loan was repaid after NRL Rentals filed for bankruptcy.

118.    Neither Dwight nor Marcel nor any of their business ventures (including Bosworth Farms and/or the Marine Quest Defendants) received or benefited from any amount of the proceeds of the Balli Loan; all of the proceeds were used by NRL Rentals to fund operations and equipment purchases.

**Bank Accounts, Tax Returns, and Financial Statements.**

**NRL Entities.**

119.    NRL Rentals and NRL San Antonio maintained separate bank accounts in their own names.

120.    Neither of the Bosworths had access to any of the franchisees' bank accounts.

121.    NRL Rentals and NRL San Antonio also filed separate annual tax returns that were prepared by the accounting firm of Wood Sanford PC, which also prepared tax returns for the Marine Quest Defendants, Bosworth Farms, and each of the Bosworths.

122.    Marcel introduced Balli to the Wood Sanford firm.

123.    Neither of the Bosworths played any role in the preparation of any of the tax returns that were filed by either of the NRL entities, nor did either of the Bosworths communicate with the Wood Sanford firm regarding the preparation of any of the tax returns that were filed by the NRL entities.

**Marine Quest Defendants.**

124.    Certain of the Marine Quest Defendants maintained separate bank accounts in their own names.

125.    Neither Balli nor any employee of NRL Rentals or NRL San Antonio had access to any of the Marine Quest bank accounts.

126.    Certain of the Marine Quest Defendants filed separate annual tax returns.

127.    Neither Balli nor any employee of NRL Rentals or NRL San Antonio played any role in the preparation of any of the tax returns that were filed for any of the Marine Quest Defendants.

128.    The mailing address that was listed on the tax returns for the Marine Quest Defendants that filed tax returns was the same as the mailing address that was listed on the tax returns for NRL Rentals and NRL San Antonio.  Neither Dwight nor Marcel directed the Wood Sanford firm to use the same address for the Marine Quest Defendants and the NRL entities; rather, Tracey Wood Sanford testified that the address was included for correspondence purposes only.

129.    Third party accountants prepared financial statements for certain of the Marine Quest Defendants.   Certain of those financial statements were audited by independent accountants who were not involved in the preparation of the financial statements.

**Bosworth Farms.**

130.    Bosworth Farms maintained a separate bank account in its own name.

131.    Neither Balli nor any employee of NRL Rentals or NRL San Antonio had access to the Bosworth Farms bank account.

132.    Bosworth Farms also filed separate annual tax returns.

133.    Neither Balli nor any employee of NRL Rentals or NRL San Antonio played any role in the preparation of any of the tax returns filed by Bosworth Farms.

**Marcel and Dwight.**

134.    Marcel and Dwight maintained their own bank accounts and filed their own joint tax returns with their respective spouses.

135.    NRL Rentals, NRL San Antonio, the Marine Quest Defendants, and Bosworth Farms did not have access to either of the Bosworths' personal bank accounts.

**D&M Account.**

136.    On the advice of their accountants and PlainsCapital Bank, the Bosworths opened the D&M Account to function as a holding account for their various business enterprises.

137.    Funds from certain transactions involving certain of the Marine Quest Defendants, the NRL entities, and/or the Bosworths' other business ventures were transferred in or out of the D&M account in order to facilitate those transactions.

138.    All transactions that were processed through the D&M Account were tracked and/or reconciled by the controller and/or third-party accountants for the Marine Quest Defendants.

139.    Each of the Bosworths held his own bank account that was separate both from the D&M Account and the account held by the other of the Bosworths.

140.    Each of the Marine Quest Defendants that maintained a bank account held its own account that was separate from the accounts held by the Bosworths, the NRL entities, the other

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

Marine Quest Defendants and the Bosworths' other business ventures.

141.    The Bosworths did not use (or permit the use of) the D&M Account as a "slush fund" or "personal piggy bank" for themselves, nor did they use (or permit the use of) the D&M Account in such a fashion for any of their business ventures, including, without limitation, any of the Marine Quest Defendants, Bosworth Farms, NRL Rentals, and/or NRL San Antonio.

142.    Neither Balli nor any employee of NRL Rentals or NRL San Antonio had access to the D&M Account.

**Operation of Franchises.**

**Beginning of Franchise Operations.**

143.    Volvo Rents did not permit either of the franchises to begin operating until it was satisfied that the franchise locations conformed with Volvo Rents' location, branding, appearance, and other pre-opening requirements.

144.    Balli began operating the Las Vegas franchise in early January 2005.  He began operating the San Antonio franchise in February or March 2006.

**Financing of Rental Equipment.**

145.    VFS provided its initial credit advance for the purchase of rental equipment for the Las Vegas franchise in late March 2005, approximately 3 months after the Las Vegas franchise opened for business.

146.    VFS provided its initial credit advance for the purchase of rental equipment for the San Antonio franchise in late October 2006, approximately 6-7 months after the San Antonio franchise opened for business.

**Transfers of Funds Between NRL Entities and Defendants.**

147.    On numerous occasions between 2005 and 2008, Balli requested that the Bosworths provide additional capital to assist with certain financial obligations of the franchises, including payroll and equipment purchases.

148.    Certain of the Marine Quest Defendants provided short-term loans to facilitate Balli's requests.

149.    In addition, the franchises obtained several short-term loans from the D&M Account.

150.    Many of the short-term loans referenced herein were memorialized by promissory notes.  In most instances, the promissory notes were prepared by Kary Toomer, an independent contractor who provided a variety of services to certain of the Marine Quest Defendants, and signed by Balli on behalf of the NRL entity to which the money was loaned.

151.    Most of the promissory notes were eventually paid in full by the NRL entity that borrowed the funds.  A few of the notes went unpaid, however, because both franchises eventually shut down operations and closed their bank accounts.

152.    None of the note repayment funds were delivered to Dwight or Marcel personally, nor did either of them personally benefit from any such funds.

**V-Rents, Manual Invoices, and Fictitious Customers.**

153.    Pursuant to the Franchise Agreements, the Las Vegas and San Antonio franchises were required to utilize V-Rents, a proprietary software program, to record financial information, track equipment rentals, manage and monitor inventory, and administer other aspects of the business of the franchises.

154.    Volvo Rents could access the V-Rents system at any time.

155.    Neither of the Bosworths ever accessed or utilized the V-Rents program for either of the franchises for any reason.

156.    Although V-Rents permitted the franchises to record and/or track actual rental/revenue generating activities, it did not permit the franchises to record and/or track non-rental/non-revenue-generating activities, including, without limitation, transporting equipment from one location to another, staging equipment for sale at an auction yard, storing equipment, tracking equipment that was taken out of the rental inventory for maintenance or repair, tracking equipment sales, and/or tracking off-rent equipment that the Las Vegas franchise was temporarily unable to locate during the hectic transition between conventions.

157.    Accordingly, in order to properly track all non-rental activity and to maintain an accurate inventory, Balli was required to create manual invoices and maintain computer files

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

(including QuickBooks files) outside of the V-Rents system.

158.   For the same reasons, Balli created a fictitious customer, L & M Contractors, within the V-Rents system.  Among other things, the L & M Contractors account was used to track equipment sales and to keep track of equipment that the Las Vegas franchise was temporarily unable to locate following a convention.

159.   Balli did not create any manual invoices or maintain any computer files to hide any equipment from any auditors for Volvo Rents or VFS.

160.   Balli did not create or utilized the L & M Contractors account to hide any equipment from any auditors for Volvo Rents or VFS.

161.   Neither of the Bosworths created manual invoices or maintain separate computer files for either of the franchises for any reason, nor did they direct Balli to create manual invoices or maintain separate computer files for either of the franchises.

162.   Neither of the Bosworths created any fictitious customers (including L & M Contractors) for either of the franchises, nor did either of them direct Balli to create any fictitious customers.

163.   Neither of the Bosworths nor Bosworth Farms nor any of the Marine Quest Defendants used any equipment from either of the franchises on a 'no-rent' basis.

**Meetings.**

164.   The principals of NRL Rentals and NRL San Antonio conducted regular telephonic meetings.  They did not keep formal meeting minutes.

165.   Bosworth Nevada Investments conducted formal meetings and kept minutes.

**Other.**

166.   In 2005, Volvo Rents named the Las Vegas franchise its "Franchise of the Year."

167.   Volvo Rents did not present any evidence that it had any significant concerns about the operations of either of the franchises between December 2004 (when the Las Vegas Franchise Agreement was executed) and October 2008 (when Volvo Rents conducted a comprehensive audit of both franchises).

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

168.   In late fall 2008, Volvo Rents discussed having Marcel and Balli join a Volvo Rents franchise governance board.

**Winding Up Operations.**

**Las Vegas Franchise.**

Return of Equipment to Las Vegas Franchise.

169.   Moore testified that in or around October 2007, the construction industry in Las Vegas turned "sharply downward," which was "a correction that none of us have ever witnessed in our lifetimes."

170.   At or around the same time, customers of the Las Vegas franchise began returning a significant quantity of rental equipment to the franchise location.

171.   Because the rental yard was not large enough to store all of the equipment that was being returned, Balli caused NRL Rentals to rent a large lot approximately one block from the rental yard.  A considerable amount of returned equipment was stored on the rented lot, which (along with certain pieces of equipment) was clearly visible from the franchise rental yard.

172.   Neither of the Bosworths removed any equipment from the rental yard, nor did either of them direct Balli or any employee of NRL Rentals to remove any equipment from that location.

173.   Neither of the Bosworths concealed any equipment from the Las Vegas franchise from Volvo Rents and/or VFS, nor did either of them direct Balli or any employee of NRL Rentals to conceal any equipment.

Vegas Rents, LLC.

174.   In or around April 2009, the Bosworths and Balli formed Vegas Rents, LLC (Vegas Rents), a Nevada limited liability company.  At that time, the Bosworths and Balli were attempting to secure financing to pay off the outstanding balances on the loans advanced by VFS for the purchase of equipment for the franchises.

175.   Vegas Rents was formed for the purpose of operating a construction equipment rental business in Las Vegas.

176.   Vegas Rents never conducted any business.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702) 873-4100 · FAX (702) 873-9966

177.   None of the equipment from either of the franchises was transferred to Vegas Rents.

**San Antonio Franchise.**

$400,000.00 Jefferson Bank Loan.

178.   On or about August 30, 2007, Marcel obtained a loan from Jefferson Bank in the principal amount of $400,000.00.  The loan, which was originated in the name of NRL Rentals, was intended to fund the purchase of additional equipment for the San Antonio franchise.

179.   The Bosworths personally guaranteed the loan.

180.   One day after the loan proceeds were transferred to the bank account for NRL San Antonio, Balli learned that a Volvo Rents store had opened across the freeway from the location of the San Antonio Franchise.  Balli promptly informed Marcel about the new store.[8]

181.   The Bosworths and Balli had no interest in competing with Volvo Rents within the exclusive franchise territory covered by the San Antonio Franchise Agreement.  However, because Marcel did not want to jeopardize the Bosworths' relationship with Jefferson Bank, the loan could not be repaid immediately.    Accordingly, Marcel directed Balli to transfer $390,000.00 of the loan proceeds to Tarrant County Marina Enterprises, Inc. (Tarrant County).  The remaining $10,000.00 of the loan proceeds was used to pay operational expenses for NRL San Antonio.

182.   At Marcel's direction, Jefferson Bank transferred the loan to Tarrant County, which eventually repaid the loan with interest.  Jefferson Bank did not formally record the loan transfer on its books until months after the loan proceeds were transferred from NRL San Antonio to Tarrant County.  However, Tarrant County and the Marine Quest controller and third

---

[8]   Among other things, the San Antonio Franchise Agreement authorized Volvo Rents to acquire sor operate non-Volvo-branded equipment rental businesses within the territory covered by the San Antonio Franchise, provided that:

a.) Volvo Rents was required to give the franchisee an opportunity to purchase the acquired business; and

b.) Volvo Rents was required to give the franchisee 30 days' written notice of Volvo Rents' acquisition of the business, and offer the franchisee the opportunity to purchase the acquired business for a price to be determined by an independent appraiser.  TE 675.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

party accountants treated the loan as a Tarrant County loan from the date that it was transferred.

183.    Neither of the Bosworths converted any of the loan proceeds to their own use, nor did they direct anyone else to utilize any amount of the loan proceeds for their personal benefit.

<u>Equipment Delivered to Marinas</u>.

184.    Following the discovery of the new Volvo Rents store in San Antonio, the Bosworths and Balli decided to discontinue operating the San Antonio franchise.  Accordingly, Balli began removing equipment from the rental yard.  A few pieces of equipment were shipped back to Las Vegas.  However, because shipping was prohibitively expensive, and because several of the Marine Quest marinas were located near a large auction house in Fort Worth, the Bosworths agreed to permit Balli and the San Antonio franchise to store a significant amount of equipment at the marinas until it could be delivered to Las Vegas or sold at auction.

185.    Balli recorded  and tracked the movement and location of all of the equipment in the V-Rents system and/or on 'zero rent' contracts.

186.    Neither of the Bosworths ever used (or directed the use of) any of the equipment for their personal benefit.

187.    The marinas at which the equipment was stored could not use the equipment because it was not suitable for marine/marina use.

188.    Neither of the Bosworths ever concealed any equipment from Volvo Rents or VFS at any of the marinas, nor did they direct Balli or any Marine Quest employee or independent contractor to conceal such equipment.

<u>Heisel's Rent-All</u>.

189.    At Balli's direction, certain pieces of equipment from the San Antonio franchise were delivered to Heisel's Rent-All (<u>Heisel's</u>), an equipment rental business located in New Braunfels, Texas.

190.    All of the equipment that was sent to Heisel's was tracked in the V-Rents system and/or on no-rent contracts.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

191.   Neither of the Bosworths concealed any equipment from Volvo Rents or VFS at Heisel's, nor did they direct Balli, any employee of the San Antonio franchise, or any Heisel's employee to conceal any equipment.

Equipment Solutions.

192.   Also at Balli's direction, certain pieces of equipment from the San Antonio franchise were delivered to Equipment Solutions, a construction equipment rental company in Texas, and placed on consignment.

193.   All of the equipment that was sent to Equipment Solutions was tracked in the V-Rents system and/or on no-rent contracts.

194.   Neither of the Bosworths concealed any equipment from Volvo Rents or VFS at Equipment Solutions, nor did they direct Balli, any employee of the San Antonio franchise, or any Equipment Solutions employee to conceal any equipment.

Alamo Trucking.

195.   Also at Balli's direction, certain pieces of equipment from the San Antonio franchise were delivered to Alamo Trucking for shipping to Las Vegas.

196.   All of the equipment that was sent to Alamo Trucking was tracked in the V-Rents system and/or on no-rent contracts.

197.   Because NRL San Antonio was unable to pay all of the shipping charges, Alamo Trucking placed a shipping lien on certain pieces of equipment.  Certain pieces of equipment from the San Antonio franchise are currently in Alamo Trucking's custody or control.

198.   Neither of the Bosworths concealed any equipment from Volvo Rents or VFS at Alamo Trucking, nor did either of them direct Balli, any employee of NRL San Antonio, or any employee of Alamo Trucking to conceal any equipment.

**Volvo Rents' Trial Witnesses.**

**Live Testimony.**

199.   The following witnesses presented live testimony in Volvo Rents' case-in-chief:

- Barry Natwick

- Evan Brumm

1   • Jerry Baker

2   • Mike Usher

3   • Doug Taylor

4   • P.W. Davis

5   • Mike Crouch

6   • Bob Balli

7   • Dwight Bosworth

8   • Marcel Bosworth

9   • George Swarts

10  **Deposition Testimony.**

11      200.    The testimony of the following witnesses was presented by deposition in Volvo

12  Rents' case-in-chief:

13  • Marty Moore

14  • Tracey Wood-Sanford

15  • Jennifer Moore

16  • Rachel Erick

17  • Sherilyn Whatley

18  • Michael Woody

19  • Melanie Bene

20  • Stephen Snellman

21

22

23

24

25

26

27

28

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

**CONCLUSIONS OF LAW**

Based on the foregoing, and pursuant to and in accordance with Rule 52(c) of the Federal Rules of Civil Procedure,[9] IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Defendants' Motion is GRANTED in its entirety.  Specifically, the following claims by Volvo Rents are adjudicated in favor of Defendants and against Volvo Rents:

**Fraud (12th Claim for Relief).**

1.    In order to prevail on its fraud claim, Volvo Rents must demonstrate, by clear and convincing evidence, that:

(a) The Bosworths made a false representation to Volvo Rents with either knowledge or belief that it was false;

(b) The Bosworths intended that Volvo Rents would rely on such representation; and

(c) Volvo Rents suffered damages as a result of such reliance.

Nelson v. Heer, 123 Nev. 217, 225-26, 163 P.3d 420, 426 (Nev. 2007); see also J. A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 120 Nev. 277, 89 P.3d 1009 (Nev. 2004) (fraud must be proven by clear and convincing evidence).

2.    As an initial matter, to the extent that any portion of Volvo Rents' fraud claim pertains to any representations that either of the Bosworths made to VFS (which were not proven) and/or any harm that VFS allegedly suffered as a result of the Bosworths' representations (which was also not proven), the Court has already ruled that Volvo Rents cannot maintain the claim because tort claims are not assignable.[10]

3.    Volvo Rents claims that the Bosworths committed fraud by submitting falsified personal financial statements and other financial records in order to induce Volvo Rents to enter

---

[9]  Judgment on Partial Findings. If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

[10]  See Order Granting Defendants' Motion to Dismiss Tort Claims (#564), and cases cited therein.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

into the Franchise Agreements.[11]   Volvo Rents offered no proof to support this allegation. Indeed, Volvo Rents' Chief Financial Officer, Evan Brumm, testified that he had no reason to believe that either of the Bosworths falsified any financial information that they submitted to Volvo Rents.

4.      Next, Volvo Rents contends that the Bosworths committed fraud by misrepresenting their initial capitalization of, and/or equity investments into, NRL Rentals.[12] However, during their limited, "high level" communications with Volvo Rents prior to the execution of the Las Vegas Franchise Agreement (which makes no mention of any capitalization requirements), neither of the Bosworths made any representations to Volvo Rents regarding the amount that they would invest in NRL Rentals, Bosworth Nevada Investments, and/or the Las Vegas franchise.  Likewise, no officer or employee of Volvo Rents ever informed the Bosworths that either of them was required to invest a specific minimum amount of capital in NRL Rentals, Bosworth Nevada Investments, and/or the Las Vegas franchise.   Moreover, because VFS provided "asset-only" financing for the Las Vegas franchise, the Bosworths provided a significant amount of capital for rent, leasehold improvements (including, among other things, paving, fencing, signage, interior improvements, and painting), furniture, fixtures, and other pre-opening improvements and supplies that were required before Volvo Rents would authorize the opening and operation of the Las Vegas franchise.  They also provided service and sales trucks for use by the franchise, and they repaid the $435,000.00 Balli Loan that was used to purchase equipment and pay operating expenses for the Las Vegas franchise.  Finally, Volvo Rents did not have a capitalization requirement; VFS did.

5.      Volvo Rents also claims that Dwight committed fraud by representing that he deposited $149,000.00 into NRL San Antonio "in order to induce VFS" to provide additional funding for equipment for the San Antonio franchise, then withdrawing the $149,000.00 and transferring it to himself, five of the Marine Quest Defendants, and Kevin Lafferty.[13]   As an

---

[11]  See First Am. Compl. (#127) at ¶ 169(a).

[12]  Id. at ¶ 169(b).
[13]  Id. at ¶ 169(c).

initial matter, Volvo Rents cannot maintain this portion of its fraud claim because only VFS – not Volvo Rents – provided funding for the purchase of equipment. Moreover, the Bosworths and Balli understood that Volvo Rents only required proof of the $149,000.00 deposit so that Volvo Rents could obtain the first million dollars in VFS funding for the San Antonio franchise. Finally, Volvo Rents never informed either of the Bosworths that they were required to maintain any amount of equity in the NRL San Antonio bank account and/or the San Antonio franchise, nor did it ever direct either of the Bosworths not to transfer (or order the transfer) of any funds from the NRL San Antonio bank account or the San Antonio franchise.

6.     Volvo Rents also contends that the Bosworths committed fraud by misrepresenting the initial capitalization of, and/or equity investments into, NRL San Antonio.[14] Again, Volvo Rents did not have a capitalization requirement; VFS did. Furthermore, prior to the execution of the San Antonio Franchise Agreement (which makes no mention of any capitalization requirements), neither of the Bosworths made any representations to Volvo Rents regarding the amount that they would invest in NRL San Antonio, NRL Texas, and/or the San Antonio franchise. Likewise, no officer or employee of Volvo Rents ever informed the Bosworths that either of them was required to invest a minimum amount in NRL San Antonio, NRL Texas, and/or the San Antonio franchise. Finally, as was the case with the Las Vegas franchise, Volvo Rents would not have authorized the opening of the San Antonio franchise had the Bosworths not invested a significant amount of money in pre-opening expenses.

7.     Volvo Rents also claims that the Bosworths and Balli "contrived to maintain two separate books of accounting for customer repair work for the purposes of concealing service revenue, and thus concealing sums owed, and past due, to [Volvo Rents . . . .]"[15] However, neither of the Bosworths were involved in the day-to-day management or operations of either of the franchises, nor did either of the Bosworths maintain (or direct Balli to maintain) two separate books of accounting. Furthermore, Balli had to maintain service records in separate computer and QuickBooks files because the V-Rents system only permitted him to record transactions on a

[14]  Id. at ¶ 169(d).

[15]  Id. at ¶ 170(a).

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

‘rent-to-rent’ basis.

8.     Next, Volvo Rents claims that the Bosworths and Balli "contrived to generate manual invoices for services and equipment . . . thereby concealing service revenue, and thereby concealing sums owed, and past due, to [Volvo Rents.]"[16]  For the same reasons discussed in the preceding paragraph, Volvo Rents did not prove this portion of its fraud claim.

9.     Volvo Rents also contends that the Bosworths and Balli "permitted or contrived to permit related and favored parties to use the financed equipment for substantial periods of time (in some instances for over 1 year) on a ‘no rent’ or ‘off the books’ basis, and to conceal said activities from [Volvo Rents], thereby concealing sums owed, and past due to VFS . . . ."][17]  Again, the Bosworths had no involvement in the day-to-day management or operations of either of the franchises.  Moreover, as previously discussed, any ‘no-rent’ contracts were necessitated by the limitations imposed by V-Rents.  In addition, the Bosworths did not use (or direct the use of) any equipment for their own benefit or for the benefit of any of their business enterprises.  Indeed, the marinas could not use the equipment because it was not suited to marine use.  Finally, after the San Antonio franchise closed, the Bosworths permitted Balli to store certain equipment from the San Antonio franchise because (a) the cost of shipping equipment to Las Vegas was prohibitively expensive; and (b) the marinas to which the equipment was shipped were close to a national auction house.

10.     Volvo Rents also claims that the Bosworths and the Marine Quest Defendants "made substantial advances of funds of the NRL Entities to themselves, their spouses, and their related entities, including the Marine Quest Defendants, and have taken efforts to conceal said activities from [Volvo Rents], thereby concealing sums owed, and past due, to [Volvo Rents]" by (a) transferring $390,000.00 from NRL Rentals to the D&M Account; and (b) paying unspecified "[p]ersonal obligations, loans, and other obligations . . . with funds of the NRL Entities."[18]

---

[16]  Id. at ¶ 170(b).

[17]  Id. at ¶ 170(c).

[18]  Id. at ¶¶ 171(a), (b), and (g).

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

1   As to the first allegation, the Bosworths had no obligation to inject any amount of capital

2   into the San Antonio franchise in August 2007.  Nevertheless, they obtained (and personally

3   guaranteed) a $400,000.00 loan from Jefferson Bank in August 2007 to fund the purchase of

4   equipment and pay operating expenses for the San Antonio franchise.  Immediately after the loan

5   was funded, Balli discovered that a Volvo Rents store was operating across the freeway from the

6   San Antonio franchise.  Because Balli and the Bosworths were not interested in having the San

7   Antonio franchise compete with Volvo Rents, Marcel directed Jefferson Bank to transfer the

8   remaining $390,000.00 loan proceeds to Tarrant County, which eventually repaid the loan in full,

9   with interest.  Accordingly, this portion of Volvo Rents' fraud claim fails.

10   Volvo Rents did not present any evidence to support the second allegation.

11   11.   Volvo Rents also contends that Balli committed fraud by using NRL funds for

12   personal expenses, including purchasing a motor home and a Corvette, paying personal living

13   expenses, and paying personal landscaping expenses, and by concealing such activities from

14   Volvo Rents in order to conceal monies owed to Volvo Rents.[19]  Volvo Rents did not present

15   evidence to support any of these allegations.[20]

16   12.   Volvo Rents also claims that "[f]unds and assets have been siphoned off NRL

17   Entities and given to Hilary Balli, NRL High Access, LLC, and the R & H.P. Balli Family

18   Trust."[21]  Volvo Rents did not present any evidence to support this allegation.

19   13.   In addition, Volvo Rents contends that "the defendants" committed fraud by

20   "develop[ing] a false and fictitious customer, i.e. 'L & M Contractors,' which they reported on

21   their books, and under which they would falsely and fraudulently identify financed equipment as

22   being rented.  L & M does not exist and is a fraudulent vehicle by which defendants would 'hide'

23   equipment so as to avoid accruing obligation and payment to [Volvo Rents.]"[22]  Again, the

24   Bosworths had no involvement in the day-to-day operations or management of either of the

25   ───────────────
    [19]   Id. at ¶¶ 171(c), (d), (e), and (f).

26   [20]   These allegations were included in Volvo Rents' First Amended Complaint, but were not
    tried because Balli filed for bankruptcy during the course of litigation.

27   [21]   Id. at ¶ 171(h).

28   [22]   Id. at ¶ 172(a).

McDONALD • CARANO • WILSON LLP
2100 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

franchises. Likewise, the Bosworths did not have any involvement in the creation or utilization of L & M Contractors. Rather, Balli created that account because of the limitations imposed by the V-Rents system.

14. Finally, Volvo Rents claims that "Defendants" falsely booked certain equipment as rented to Heisel's and Equipment Solutions. Neither of the Bosworths had any involvement in any transactions involving Heisel's or Equipment Solutions.

15. In sum, Volvo Rents failed to prove any portion of its fraud claim against Dwight, Marcel, either of their spouses, any of the Marine Quest Defendants, Bosworth Farms, NRL San Antonio, and/or any of the Bosworths' other business ventures.

**Negligence (Thirteenth Claim for Relief).**

16. To make out its negligence claim, Volvo must demonstrate that Defendants owed Volvo a duty, that they breached that duty, causation, and damages. See Scialabba v. Brandise Constr. Co., 112 Nev. 965, 921 P.2d 928 (Nev. 1996).

17. None of the Defendants owed any duties to Volvo that might give rise to a negligence claim.

18. Accordingly, Volvo's negligence claim fails as a matter of law.

**Negligent Misrepresentation (Fourteenth Claim for Relief).**

19. A claim for negligent misrepresentation requires proof that (1) a defendant, in the course of an action in which he has a pecuniary interest, did not exercise reasonable competence or care in obtaining or communicating information to the plaintiff; (2) the plaintiff reasonably relied on such information; and (3) as a result, the plaintiff suffered damages. See Barmettler v. Reno Air, Inc., 114 Nev. 441, 956 P.2d 1382 (Nev. 1998).

20. Between fall 2004 (when Balli asked the Bosworths to invest in the Las Vegas franchise) and mid-October 2008 (when Volvo Rents audited both franchises), the Bosworths had very few communications with any officers or employees of Volvo Rents. None of Volvo Rents' witnesses identified any misrepresentations made to Volvo Rents by either of the Bosworths during any of those communications.

21. Accordingly, this claim also fails as a matter of law.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

1

**Unjust Enrichment (Fifteenth Claim for Relief).**

2    22.    "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the

3   retention of money or property of another against the fundamental principles of justice or equity

4   and good conscience."  The essential elements of unjust enrichment "are a benefit conferred on

5   the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and

6   retention by the defendant of such benefit."  Topaz Mut. Co., Inc. v. Marsh, 839 P.2d 606,

7   613 (Nev. 1992) (citations omitted).

8    23.    To the extent that this claim has been asserted against Marcel and/or Dwight, the

9   Court has already adjudicated this claim in favor of the Bosworths and against Volvo (#564).  To

10   the extent that this claim is asserted against any of the entity defendants against which judgment

11   has been entered, Volvo may not recover on this claim.  See Menalco v. Buchan, 2010 WL

12   428911 at *30-31 (D. Nev. 2010) (plaintiff may not recover on both breach of contract and

13   unjust enrichment claims).

14    24.    Volvo Rents (which did not provide any equipment or financing to either of the

15   franchises) did not demonstrate that it conferred a benefit on any of the remaining Defendants.

16   Therefore, this claim also fails as a matter of law.

17

**Conversion (Seventeenth Claim for Relief).**

18    25.    Conversion is a "distinct act of dominion wrongfully exerted over another's

19   personal property in denial of, or inconsistent with his title or rights therein _or_ in derogation,

20   exclusion, or defiance of such title or rights."  M.C. Multi-Family Dev., L.L.C. v. Crestdale

21   Assocs., Ltd., 124 Nev. 901, 910-911, 193 P.3d 536, 542-43 (Nev. 2008).  It is "an act of general

22   intent, which does not require wrongful intent and is not excused by care, good faith, or lack of

23   knowledge."  Id. at 911, 193 P.3d at 543

24    26.    To the extent that this claim is asserted against the Bosworths relative to any

25   personal property of VFS, the Court has already adjudicated this claim against Volvo Rents and

26   in favor of the Bosworths (#564).

27    27.    To the extent that this claim is asserted against any of the other Defendants

28   relative to any personal property of VFS, the claim fails as a matter of law, as tort claims cannot

1   be assigned.  See id., and cases cited therein.

2          28.     To the extent that this claim is asserted against the Bosworths relative to any

3   personal property of Volvo Rents, Volvo Rents did not demonstrate that either of the Bosworths

4   converted any of its personal property.

5          29.     To the extent that this claim is asserted against any of the other Defendants

6   (including, without limitation, Bosworth Farms and/or any of the Marine Quest Defendants)

7   relative to any personal property of Volvo Rents, Volvo Rents did not demonstrate that any of

8   the other Defendants converted any of Volvo's personal property. [23]

9          **Civil Conspiracy (Twentieth Cause of Action).**

10         30.     "An actionable conspiracy consists of a combination of two or more persons who,

11  by some concerted action, intent to accomplish an unlawful objective for the purpose of harming

12  another, and damage results from the act or acts."  Sutherland v. Gross, 105 Nev. 192, 196, 772

13  P.2d 1287, 1290 (Nev. 1989).

14         31.     Volvo Rents presented no evidence that any of the Defendants (including either of

15  the Bosworths) engaged in a concerted action with the intent to accomplish an unlawful objective

16  for the purpose of harming Volvo Rents.  Accordingly, Volvo Rents' civil conspiracy claim fails

17  as a matter of law.

18         **Alter Ego (Eleventh Cause of Action).**

19         32.     In order for either of the Bosworths to be liable to Volvo Rents for the $10 million

20  judgment that Volvo Rents obtained against the judgment debtors in this action (#459), Volvo

21  Rents must demonstrate that:

22              (a) The corporation [Bosworth Nevada Investments, NRL Texas, NRL Rentals,
23                  and/or NRL San Antonio] was influenced and governed by the person
                    asserted to be its alter ego;

24              (b) There was such unity of interest and ownership that one is inseparable from
25                  the other; and

26              (c) The facts were such that adherence to the fiction of a separate entity would,
                    under the circumstances, sanction a fraud or promote an injustice.

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    [23]   Again, Volvo Rents did not provide any equipment or financing for either of the franchises,
28  so none of the Defendants could have converted any of Volvo Rents' personal property.

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

McDONALD · CARANO · WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 · LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 · FAX (702) 873-9966

1   Truck Ins. Exch. v. Palmer J. Swanson, Inc., 124 Nev. 629, 635, 189 P.3d 656, 660 (Nev.

2   2008).[24]

3         33.    A court must examine all of the circumstances to determine whether the alter ego

4   doctrine should apply, and no single factor is determinative.  Zoran Corp. v. Chen, 110 Cal. Rptr.

5   3d 597, 607 (Cal. Ct. App. 2010).

6         **Influence and Governance of Entities.**

7                        Las Vegas.

8         34.    On paper, the Bosworths had the ability to influence and control NRL Rentals and

9   the Las Vegas franchise if they acted in concert because they controlled 2/3 of the membership

10  interests in Bosworth Nevada Investments, which held a majority membership interest in NRL

11  Rentals.  In reality, however, Bosworth Nevada Investments did not conduct any business, and

12  the evidence clearly demonstrated that Balli, and not the Bosworths, directed the day-to-day

13  operations and management of NRL Rentals and the Las Vegas franchise.  The only evidence

14  that Volvo Rents elicited regarding the Bosworths' participation in the management of the

15  franchise was related to the Balli Loan, which (a) they had no obligation to repay; and (b) they

16  repaid to protect their relationship with PlainsCapital Bank, not to influence or govern NRL

17  Rentals and/or the Las Vegas franchise.

18        35.    Therefore, neither of the Bosworths influenced or governed Bosworth Nevada

19  Investments, NRL Rentals, and/or the Las Vegas franchise.

20                       San Antonio.

21        36.    Balli was the sole member of Texas Rentals, LLC, the general partner of NRL

22  San Antonio.  Thus, the Bosworths were unable to legally control NRL San Antonio.  Moreover,

23  the evidence demonstrated that Balli, and not the Bosworths, actually directed the day-to-day

24  operations and management of the San Antonio franchise.  The only evidence that Volvo Rents

25  ──────────────
    [24]   Shortly before trial, Volvo Rents filed a choice of law brief (#624) wherein, among other

26  things, it argued that the Court should apply Nevada alter ego law relative to NRL Rentals and
    Bosworth Nevada Investments, and Texas law relative to NRL Texas and NRL San Antonio.  As

27  discussed herein, Volvo Rents did not prove that the Bosworths are liable for any wrongdoing,
    which is a threshold to imposing alter ego liability.  Therefore, regardless of whether Texas or

28  Nevada law is applied, Volvo Rents cannot prevail on its alter ego claim.  As such, this order
    does not contain a detailed analysis of Texas alter ego law.

elicited regarding the Bosworths' participation in decision-making for the franchise was related to the $400,000.00 Jefferson Bank loan, which (consistent with the Bosworths' express intention to act solely as silent partners/investors) was intended to be used for an additional infusion of capital to fund the San Antonio franchise.  Marcel transferred the loan to Tarrant County only after learning that Volvo Rents had opened a competing store.

37.    Thus, neither of the Bosworths influenced or governed NRL Texas, NRL San Antonio, and/or the San Antonio franchise.

**Unity of Interest and Ownership.**

38.    "[T]he following factors, though not conclusive, may indicate the existence of an alter ego relationship:  (1) commingling of funds; (2) undercapitalization; (3); unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities."  LFC Mktg. Group, 115 Nev. at 904, 8 P.3d at 847.  In other words, among other things, courts examine those factors in analyzing whether there is a sufficient "unity of interest and ownership" to impose alter ego liability.  Polaris Indus. Corp. v. Kaplan, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987) (citing N. Arlington Med. Bldg., Inc. v. Sanchez Constr. Co., 86 Nev. 515, 471 P.2d 240 (1970)).

39.    The foregoing factors are analyzed in greater detail below.

<u>Commingling of Funds</u>.

40.    At first glance, the NRL Rentals bank records may appear to demonstrate that funds were freely transferred between NRL Rentals, NRL San Antonio, the D&M Account, and/or the bank accounts of various of the Marine Quest Defendants.  However, the bank records do not tell the complete story.  The testimony of Balli, Dwight, Marcel, and Tracey Wood-Sanford revealed that NRL Rentals and NRL San Antonio gave numerous promissory notes for short-term loans that were advanced by the D&M Account and various of the Marine Quest Defendants, that the funds were used for operating expenses and equipment purchases for the franchises, and that most of the notes were paid in full by the borrowers.  Moreover, NRL Rentals, NRL San Antonio, the Bosworths, and certain of the Marine Quest Defendants maintained separate bank accounts.  Furthermore, the D&M Account was not, as Volvo alleged,

a "slush fund" or "personal piggy bank" for the Bosworths and/or any of the entities in which they have an interest.  Rather, it was a holding account that the PlainsCapital Bank and the Marine Quest Defendants' independent accountants recommended that the Bosworths open to facilitate transactions involving the Marine Quest Defendants.  Finally, all of the transfers of funds between NRL Rentals or NRL San Antonio, on the one hand, and the D&M Account or any of the Marine Quest Defendants, on the other, were tracked and/or reconciled by the in-house controller and/or independent accountants for the Marine Quest Defendants.  Therefore, Volvo Rents did not demonstrate that the Bosworths or any of the Marine Quest Defendants improperly commingled any of their funds with any funds of NRL Rentals and/or NRL San Antonio.

<u>Capitalization</u>.

41.    In making a determination as to whether an entity was undercapitalized, "courts focus on the initial capitalization:  whether a corporate entity was or was not set up for financial failure."  <u>In re BH S&B Holdings LLC</u>, 420 B.R. 112, 136 (Bkrtcy. S.D.N.Y. 2009)  (citations and internal punctuation omitted).

42.    Furthermore, "[u]ndercapitalization, where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied.  However, in the absence of fraud or injustice to the aggrieved party, it is not an absolute ground for disregarding a corporate entity."  <u>North Arlington Med. V. Sanchez Constr.</u>, 86 Nev. 515, 522, 471 P.2d 240, 244 (Nev. 1970).

Las Vegas.

43.    Although the Bosworths did not invest money directly into Bosworth Nevada Investments, they invested a significant amount of money into the Las Vegas franchise for the benefit of Bosworth Nevada Investments, NRL Rentals, and/or the franchise, including, without limitation, funds for franchise fees, rent, leasehold improvements, fixtures, computer equipment, equipment wash racks, and service equipment for which VFS did not provide financing.

44.    The Bosworths also provided numerous pieces of equipment to establish the rental inventory for the Las Vegas franchise because the franchise opened and began operating

1 approximately 3 months before VFS provided financing for equipment.

2     45.    Moreover, the Bosworths caused certain of the Marine Quest Defendants and the

3 D&M Account to fund numerous short-term loans to assist NRL Rentals in making payroll and

4 purchasing additional rental equipment.

5     46.    Finally, even though they had no obligation to do so, the Bosworths paid off the

6 $435,000.00 Balli Loan, all of the proceeds of which were utilized for operational expenses and

7 equipment purchases.

8     47.    Accordingly, the Las Vegas franchise was not "set up for financial failure."

9         San Antonio.

10     48.    Similarly, Volvo Rents would not have approved the opening and/or operation of

11 the San Antonio franchise had Volvo Rents' location, branding, appearance, and other pre-

12 opening requirements been met.  The Bosworths assisted in meeting those requirements by

13 providing capital to the San Antonio franchise and/or NRL San Antonio for expenses including

14 franchise fees, rent, leasehold improvements, fixtures, and service equipment.

15     49.    Moreover, the San Antonio franchise required an infusion of rental equipment in

16 order to operate for 6-7 months prior to VFS issuing its first credit advance.  The Bosworths

17 provided some or all of that equipment.

18     50.    In addition, although they had no obligation to do so, the Bosworths obtained (and

19 personally guaranteed) the $400,000.00 loan from Jefferson Bank with the intent of funding

20 operational expenses and purchasing additional equipment for the San Antonio franchise.

21 Marcel directed that the loan be transferred to Tarrant County only after he learned that Volvo

22 Rents had opened a store across the freeway from the San Antonio franchise location.

23     51.    Therefore, like the Las Vegas franchise, the San Antonio franchise was also not

24 "set up for financial failure."

25     <u>Unauthorized Diversion of Funds</u>.

26     52.    Volvo Rents did not present any evidence to support its contention that either of

27 the Bosworths used any funds of any of the NRL entities for their own benefit, for their spouses'

28 benefit, or for the benefit of Bosworth Farms or any of the Marine Quest Defendants.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

<u>Treatment of Corporate Assets as the Bosworths' Own</u>.

53.     All of the transactions between the NRL entities, on the one hand, and the D&M Account, Bosworth Farms, and/or any of the Marine Quest Defendants, on the other, were conducted at arm's length.  Moreover, the marinas that stored equipment from the San Antonio franchise did not use any of the equipment that Balli delivered after the franchise closed, nor could they:  the construction equipment that was transferred was not suitable for marine use. Finally, neither of the Bosworths used any franchise assets for their own benefit, nor did they direct Balli or any employee of either of the franchises to utilize any franchise assets for the benefit of their spouses, Bosworth Farms, or any of the Marine Quest Defendants.

54.     Thus, Volvo Rents did not present any evidence to support its contention that the Bosworths, Bosworth Farms, and/or any of the Marine Quest Defendants treated any assets of NRL Rentals or NRL San Antonio as their own.

<u>Corporate Formalities</u>.

55.     Bosworth Nevada Investments, NRL Rentals, NRL Texas, and NRL San Antonio were each organized in accordance with the laws of the state in which they were organized (Bosworth Nevada Investments and NRL Rentals in Nevada, and NRL Texas and NRL San Antonio in Texas).  Moreover, although they did not conduct formal meetings or keep formal meeting minutes for any of the entities other than Bosworth Nevada Investments, the Bosworths and Balli conducted regular telephonic meetings to discuss the business of the franchises for which the entities were organized.  Furthermore, neither NRL Rentals nor NRL San Antonio nor NRL Texas shared offices or employees with Bosworth Farms or any of the Marine Quest Defendants.  Finally, all of those entities and each of the Bosworths filed separate tax returns, and NRL Rentals, NRL San Antonio, and each of the Bosworths maintained separate bank accounts.

56.     All of the entities at issue sufficiently observed corporate formalities.

**Fraud or Injustice.**

57.      The Nevada Supreme Court has determined that "the corporate cloak should not be lightly thrown aside, and . . . the alter ego doctrine is an exception to the general rule

1   recognizing corporate independence." LFC Mktg. Group, Inc. v. Loomis, 115 Nev. 896, 903-04,

2   8 P.3d 841, 846 (Nev. 2000).

3        58.    In addition, "[t]he alter ego doctrine does not guard every unsatisfied creditor of a

4   corporation but instead affords protection where some conduct amounting to bad faith makes it

5   inequitable for the corporate owner to hide behind the corporate form." Sonora Diamond Corp.

6   v. Sup. Ct., 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000).

7        59.    In short, "[a]lter ego is an extreme remedy, sparingly used." Id.

8        60.    The fact Volvo Rents is liable to VFS in the approximate principal amount of $10

9   million does not make either of the Bosworths liable to Volvo Rents merely because the

10  Bosworths had direct or indirect ownership interests in certain of the judgment debtor entities.

11  Rather, Volvo Rents must demonstrate that a fraud or injustice would be promoted if the

12  Bosworths were not found to be the alter ego(s) of one or more of those entities.

13       61.    As discussed above, none of the customary factors that courts analyze in

14  determining whether to assign alter ego liability weighs in favor of Volvo Rents.  Indeed, Volvo

15  Rents did not demonstrate that either of the Bosworths engaged in any wrongdoing whatsoever.

16  Therefore, the Court need not engage in a detailed discussion as to fraud or injustice.

17       **Additional Considerations**.

18       62.    In addition to the foregoing, Volvo Rents' conduct must be taken into account

19  when assessing fault for the failure of the San Antonio:  without seeking or obtaining the

20  permission of NRL San Antonio, Volvo Rents opened a store across the freeway from the San

21  Antonio franchise, which caused the Bosworths and Balli to close the franchise because they had

22  no interest in competing with Volvo Rents within NRL San Antonio's exclusive franchise

23  territory.

24       63.    Furthermore (as Natwick and Moore conceded), the impact of the Great

25  Recession on the failure of the Las Vegas franchise cannot be ignored.  The construction industry

26  in Las Vegas all but disappeared in late 2007/early 2008.  In all likelihood, no amount of the

27  Bosworths' capital would have saved the franchise, the success of which was directly related to

28  the viability of the construction industry.

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

64.     Volvo Rents did not present any evidence to demonstrate that either of the Bosworths engaged in any conduct that would sanction the imposition of alter ego liability. Therefore, the Court need not conduct a "reverse veil-piercing" analysis to determine whether any of the Marine Quest Defendants, Bosworth Nevada Investments, and/or Bosworth Farms is/are the alter ego(s) of the Bosworths, or either of them.[25]

**JUDGMENT IS ENTERED AS FOLLOWS**:  Based on the foregoing Findings of Fact and Conclusions of Law, Plaintiff shall take nothing by suit.

**JUDGMENT IS FURTHER ENTERED AS FOLLOWS**: Defendants may make a motion for attorneys' fees, if appropriate, and demand costs as provided for under the Federal Rules of Civil Procedure, and any other applicable rule or statute.

Dated: February 8, 2013.

_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

_____
James T. Kilroy, Esq.
Brian P. Gaffney, Esq.
*Attorney for Plaintiff Volvo*
*Construction Rents, Inc.*

McDONALD • CARANO • WILSON LLP
2300 WEST SAHARA AVENUE, SUITE 1000 • LAS VEGAS, NEVADA 89102
PHONE (702)873-4100 • FAX (702) 873-9966

---

[25]     Volvo Rents did not present any evidence to support any of its claims against NRL High Access, LLC, Vegas Rents, and/or Chavez.